JAMES HENRY McROY *v.* STATE OF MARYLAND

[No. 294, September Term, 1974.]

*Decided January 16, 1975.*

The cause was argued before ORTH, C. J. and GILBERT and LOWE, JJ.

*Alan D. Massengill, Assigned Public Defender*, with whom were *Massengill & Michael* on the brief, for appellant.

*Leroy Handwerger, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County*, and *Irma S. Raker, Assistant State's Attorney for Montgomery County*, on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

In the arena provided contestants in an adversary system, it is not surprising that the atmosphere of conflict may occasionally affect the referee. It is inevitable that at some time, some adversary will lose perspective and view as an enemy the judge sitting opposite him rather than the opponent sitting next to him. If these forays develop personal feelings the one toward the other, the defendant, who should demand the total attention of all participants, may become the loser. There remains contemporary purpose in the hoary aphorism "veritas nimium altercando amittitur" — by too much altercation, truth is lost.

Appellant, James Henry McRoy, was found to have violated his probation after four and one-half years of a five year probationary sentence on an original charge of indecent exposure. Since it was proven that during the period of probation, appellant had been convicted of criminal activity,

absconded from custody, did not have steady work, did not report job changes as required, did not avail himself of psychiatric help and regularly used drugs, it would seem that the decision to revoke probation was not an unjust one. The road leading to that result was, however, a rocky one indeed.

Appellant appeared before the Circuit Court for Montgomery County on October 17, 1973 following his arrest on bench warrant issued May 17, 1973. He was released on bond. Appellant had not obtained counsel for his October 17, 1973 hearing on violation of probation, nor was counsel appointed. The attorney who had been appointed to represent McRoy when the original sentence was imposed appeared pursuant to notice.

Upon questioning by the court the attorney stated that he had represented McRoy in the conviction for which probation was now subject to revocation; however, he had not represented him at, nor known of, two criminal trials since the original representation. He argued that the State should have filed a formal petition alleging violation of probation and for that reason, as well as to provide him time to prepare, the hearing should be postponed. Paradoxically, he then stated he had not entered his appearance in this case. Being so advised the court asked what standing the attorney had to represent McRoy, to which he replied:

> "Because you ordered me to appear here by your letter directly to me to which I feel there is a return receipt somewhere. I had to sign a return receipt."

The court responded:

> "I don't remember. If I wrote you, I may have written you saying we are putting you on notice that your former client had been charged with violating probation and leaving it up to you to decide whether you wanted to enter your appearance so you have no standing."

The hearing was then held without benefit of counsel for

McRoy, and the court struck the suspension and reimposed the five year sentence.

On November 14, 1973 correspondence by appellant to the court was treated as a petition for review of sentence. Counsel then entered his appearance on appellant's behalf on January 16, 1974 and pursuant to his motion of March 5, 1974 the appellant's letter was "docketed as a motion for modification of sentence under [Md. Rule] 764," *nunc pro tunc.* The order conceded that the October 17, 1973 proceeding "did not substantially comply with the requirements of *Gagnon* [*v. Scarpelli*, 411 U. S. 778]"[1] and thus ordered the:

---

1. The Order of March 5, 1974 contained a mistaken assumption which ignited the entire subsequent melange of pleadings and misunderstandings. The Order rested upon the court's erroneous application of Scarpelli to Maryland procedures:

"One of the requirements of *Gagnon* [*v. Scarpelli*] affords the probationer the opportunity to have a preliminary hearing."

While that statement is correct when applied to revocation proceedings conducted by lay persons on an administrative level, the court below should be disabused of the assumption that there are no acceptable alternatives to a preliminary hearing where revocation proceedings are conducted by the judiciary. The Scarpelli requirement of a preliminary hearing was intended for those jurisdictions where probation responsibility, and its revocation as well, is directly controlled by an administrative agency as an arm of the executive. The probation of Gerald Scarpelli was revoked under a Wisconsin procedure by its Department of Public Welfare without a hearing. "At no time was he afforded a hearing." Looking to like jurisdictions with lay supervision and administrative revocation, the court prescribed a preliminary hearing basing its rationale on the parole violation administrative procedures outlined in Morrissey v. Brewer, 408 U. S. 471, where revocation was effected by an Iowa Parole Board on the recommendation of a parole officer also sans hearing.

In jurisdictions such as Maryland where the continuing responsibility for a probationer remains with the sentencing judge, and the supervising agency merely reports violations to the court but is without revocation authority, the Supreme Court did not preclude adequate alternatives to a preliminary hearing. When the Supreme Court has decided *sub silentio* that due process is not offended by the absence of a preliminary hearing in a murder case, Coleman v. Alabama, 399 U. S. 1, 8, *(see also* Md. Dist. Rule 741 (a)), it strains credulity to interpret Scarpelli as unalterably requiring it for probation revocation proceedings judicially conducted.

The procedural due process safeguard provided by the preliminary hearing for those jurisdictions utilizing administrative revocation, is primarily to determine whether probable cause, or reasonable grounds, exists for revocation of probation. In Maryland that determination is made by a judge trained by education and experience to make such decisions. At

"State's attorney to prepare papers giving notice to the defendant of the violations of probation charged against him and giving him notice of a hearing so that he may be afforded an opportunity to show cause why his probation should not be revoked. Said hearing should be on the merits since defendant, through counsel, had indicated his waiver of any right to a Gagnon-type preliminary hearing."

---

the District Court level, only judges may issue warrants in probation revocation proceedings, not commissioners whom we otherwise authorize to issue arrest warrants for "probable cause." The significance of that responsibility is attested by its reservation to members of the judiciary. Art. 27, § 643A; Courts Art. § 2-607. We think it clear that a judicial determination of probable cause is an adequate substitute for the same determination by laymen in an administrative preliminary hearing. *Cf.* Sciortino v. Zampana, 385 F. 2d 132 (2nd Cir. 1967). That understanding is implicit in the words of the Chief Justice discussing procedural safeguards in revocation proceedings for parole violations in Morrissey v. Brewer at 486 when he acknowledged that ". . . not all situations calling for procedural safeguards call for the same kind of procedure."

As concerns the overall rights and plenary hearing to determine whether to revoke probation, the court must provide the minimum standards of due process synopsized from Scarpelli and Morrissey and outlined with greater explanation in Knight v. State, 7 Md. App. 313, 321. The guidelines set forth by Chief Judge Orth in Knight remain viable in the light of Scarpelli.

Required are:

1) reasonable notice containing the substance of the charges against probationer;
2) if counsel is requested, appointment thereof provided the Scarpelli criteria, 411 U. S. at 790, are met. If counsel is denied, insertion of a succinct statement of grounds of refusal in the record;
3) a hearing, providing an opportunity to be heard and present witnesses and evidence;
4) the right to confront and examine adverse witnesses, unless the court indicates good cause for disallowance of that right;
5) the court's reasons for revoking probation clearly reflected in the record.

Appellant also argues that we must establish "procedural standards for probation revocations." We decline to prescribe procedures beyond those minimum guidelines heretofore set forth from Knight and Scarpelli. To interpret beyond the "Plimsoll line of due process" would dangerously encroach on enactment of procedural policy.

"The judicial function is that of interpretation; it does not include the power of amendment under the guise of interpretation." West Coast Hotel Co. v. Parrish, 300 U. S. 379.

Apparently still dissatisfied, counsel for appellant filed a "Motion to Vacate Order of October 17, 1973 and Parts of Order of March 5, 1974," arguing that notwithstanding the admission of noncompliance with *Scarpelli,* the order of March 5, 1974 was "void as a matter of law and must be vacated." Counsel then argued in his petition and here, that the court does not have the authority to order the State's Attorney to prepare and file a petition for revocation of probation. This motion was denied on April 24, 1974 immediately preceding the hearing on the merits.

At the hearing the State provided evidence that while on probation appellant was convicted on two counts of indecent exposure, one count of robbery and three counts of larceny. Further evidence indicated appellant's addiction to heroin, poor employment record and avoidance of supervision. Probation was revoked and the five year sentence reimposed.

However, once again appellant's hearing proceeded with little or no assistance of counsel. Piqued as the result of an altercation with the trial judge, counsel declined to participate, save for an occasional sporadic intrusion. The crux of the misunderstanding on this occasion related to whether or not counsel agreed to waive a preliminary hearing on behalf of his client. We are without benefit of the terms of the agreement since it was made in chambers between hearings without record. The court's interpretation was simply stated:

"Mr. Massengill, you and I had a talk in chambers and it was agreed, you agreed as I understood it, that you would waive a preliminary hearing because it would be a waste of time to cover the same ground twice."

As the trial judge pointed out, however, counsel's "recollection of what transpired at [the] meeting in chambers differ[ed] substantially from the Court's." Counsel's recollection was of a somewhat complicated and "iffy" agreement which he details in his March 18, 1974 Motion to Vacate.

"That counsel for Defendant told the Court that if the correct procedure was followed and the Order of October 17, 1973 was vacated and the State's Attorney decided that, under the circumstances it was in the best interests of the citizens of the State of Maryland that a Petition for Revocation of Probation be filed against the Defendant after the Order of October 17, 1973 was vacated and such a Petition was filed and counsel was appointed by the Public Defender to represent the Defendant on such a Petition, that counsel would waive a preliminary hearing since the Court recognized the seriousness and complexity of the attempt to revoke probation after the Defendant has 'served' four and one-half years of the probation period and would need counsel to assist him in his defense."

Whatever the agreement on preliminary hearing, counsel began the second hearing by again asserting his unpreparedness and consequent inability to defend appellant. He stated overtly "I do not intend to participate in this hearing this morning," because "I am not prepared to proceed . . . This hearing is entirely and completely improper and I am not prepared and cannot represent this man without a chance to prepare the case." His request for postponement as well as his prayer for leave to withdraw was denied. When asked by the court at the conclusion of the State's case "Do you wish to put your client on the witness stand, or not," counsel again responded "I am not prepared to proceed in this matter. I have advised the Court of that; and I do not." That state of unpreparedness is attested by the record which reflects nearly negligible participation.

\* \* \*

Appellant first contends that he was denied due process because the charges amounting to a violation of probation were not under oath and that he was not provided a written statement of charges.

### Probable Cause for Revocation

Appellant analogizes the issuance of a bench warrant for a probation violation to the procedure for obtention of a search and seizure or initial arrest warrant. While some similarity may exist, the affidavit required of the latter is not essential to the former. The controlling distinction is that a probationer has been conditionally released, but remains the responsibility of the sentencing judge. The function of the Department of Parole and Probation is limited to supervising, on the court's behalf, conformity with the probation conditions. Md. Code, Art. 41, § 124. It has no direct authority over probation in the form of revocation power such as it has over parolees. As the court's agent, it reports on misconduct which violates the terms of probation. Md. Code, Art. 41, § 124 (a). If the violations are technical such reports may be informally conveyed; however, if the violations are substantial as in this case where probationer was convicted of other crimes, a detailed and lengthy "Special Report" is filed with the court. Such a report outlining the appellant's defalcations appears in the record preceding the issuance of the bench warrant. The record reflects the factual basis from which the judge may conclude the conditions of probation have been violated and probable cause to issue the bench warrant exists.

Although due process rights in general encompass probation revocations, *Gagnon v. Scarpelli, supra,* "the full panoply of rights due a defendant in such proceedings does not apply to parole [probation] revocations." *Morrissey v. Brewer,* 480. To hold otherwise and require the supervising agent who is acting as an arm of the court to provide his report under oath, or, in the present case, invalidate the result of not one but two hearings would strain technical due process beyond the safeguards contemplated by the Supreme Court.

> "Parole [probation] arises after the end of the criminal prosecution, including imposition of sentence. Supervision is not directly by the court but by an administrative agency, which is

sometimes an arm of the court and sometimes of the executive. Revocation deprives an individual, not of the absolute liberty to which every individual is entitled, but only the conditional liberty properly dependant on observance of special . . . restriction." *Morrissey*, 480.

We have said in *Knight v. State*, 7 Md. App. 313, 321 that the process is informal in character and not subject to the limitations imposed by law upon a trial leading to conviction: "the facts do not have to come to the knowledge of the court in the manner required by rules of evidence." This record reveals that the judge had ample basis in terms of probable cause to justify issuance of a warrant. *Cf.*, *Scarlett v. State*, 201 Md. 310.

## Written Notice

Appellant next complains that the charges were unwritten citing the *Scarpelli* recitations of the minimum standards of due process which *Scarpelli* quotes from *Morrissey v. Brewer*.

"They include '(a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole.' " *Scarpelli* at 786, citing *Morrissey* at 489.

Appellant emphasizes that the first of these "minimum standards" requires "written" notice. Again we think appellant's stress of technical procedure is in error. The

recitation of "minimum requirements of due process" defined the extent of the court's review and was not intended to prescribe particular procedural rules. To the contrary the recitation is preceded by a denial of that intention:

> "We cannot write a code of procedure; that is the responsibility of each State. Most States have done so by legislation, others by judicial decision usually on due process grounds."

In Maryland the procedural steps are outlined in *Knight v. State, supra,* at 321. The requirement of notice is simply stated to be that "the probationer must be seasonably informed of the substance of the charge against him." [2] This comports with the use of the term "notice" generically and the *Scarpelli* phrase to which our attention was directed by appellant " . . . a probationer or parolee is entitled to *notice* of the alleged violation . . . ." at 786 [Emphasis added].

While in jail for the offenses subsequently creating the basis of revocation, appellant was first served with a bench warrant. On October 17, 1973 a hearing was held during which all of the evidence against him was recited. That the revocation order thereunder was later vacated does not erase the actual notice the hearing provided appellant of the details of every charge and all the evidence against him.

Chief Justice Burger, in writing the *Morrissey* opinion on parole revocation which was *Scarpelli's* foundation, observed that:

> "It has been said so often by this Court and others as not to require citation of authority that due process is flexible and calls for such procedural protections as the particular situation demands . . . . Its flexibility is in its scope once it has been determined that some due process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure." *Id.* at 486.

---

2. In most instances the warrant itself is served on the violator, *e.g.,* MDR 706 (d), which seems adequate fulfillment of the "written notice" alluded to by appellant.

Most apropos to appellant's claim that absence of an oath and of a writing of the initial charge denied his constitutional rights, we recall the words of Mr. Justice Cardozo:

> "Due process is a growth too sturdy to succumb to the infection of the least ingredient of error." *Roberts v. New York,* 295 U. S. 264.

### Direction to State's Attorney

Appellant complains that the Order of March 5, 1974 compelling a new hearing to supersede the October 17, 1973 hearing, which he erroneously felt violated *Scarpelli's* requirement for a preliminary hearing, set forth the following:

> "In order that the requirements of *Gagnon* [*v. Scarpelli,* 411 U. S. 778] be. fully complied with at this new hearing, the Court directs the State's Attorney to prepare papers giving notice to the defendant of the violations of probation charged against him and giving him notice of a hearing so that he may be afforded an opportunity to show cause why his probation should not be revoked."

We see no issue before the court to be decided. Appellant concedes that the court may advise the State of the proper procedure to be followed to afford probationer due process, citing *Fontana v. Walker,* 249 Md. 459, but argues that the court cannot *compel* the State to initiate prosecution. Here prosecution had been initiated properly by the court when it issued the bench warrant in the first instance. The statement in the order defined the procedure the court wished followed. Whether the court could have *compelled* conformity with that direction is not before us since the State did comply. Appellant has no standing to complain about the State's compliance.

### Right to Counsel and Adequacy of Counsel

All of the questions remaining hinge upon the adequacy of counsel, whether he was prepared for trial, if not why not,

denial of leave to withdraw due to unpreparedness and that counsel's unpreparedness denied effective assistance of counsel entitling appellant to a new trial. As we have indicated we do not hesitate to say that at both hearings appellant's representation amounted to no representation. The sparsity of the record, however, prevents our determining whether the absence of effective representation necessarily prejudiced appellant. On the issue of the State's duty to provide counsel at a probation revocation proceeding, the Supreme Court noted that although participation of counsel would ordinarily be undesirable and unnecessary, certain cases would require it. The decision "must be made on a case-by-case basis in the exercise of sound discretion by the state authority charged with responsibility for administering the probation and parole system." The Court provided some additional guidance:

> " . . . Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate and that the reasons are complex or otherwise difficult to develop or present." *Scarpelli,* at 790.

Although the defense to be afforded against the records of conviction while on probation of indecent exposure, larceny (Criminal Nos. 12590, 12951 and 12962) and robbery (Criminal No. 12754) would in retrospect seem to indicate (1) that he did commit the alleged violation and (2) there is no evidence of justification, mitigation or complicity involved in the convictions on public record, representation once provided must be competent representation. However, the tangential questions raised being founded on un-

preparedness and inaction by counsel cannot be answered, nor resulting prejudice assessed, without adequate factual determination below. Md. Rule 1085. The competency issue is one for post conviction relief where all of the facts may be determined at an evidentiary hearing and counsel may defend his inaction.

In conclusion, we feel constrained to comment upon appellant's counsel's contention that he was unprepared for the revocation hearing, because he was not properly appointed. He argues that the form letter of appointment used the phrase "to protect Mr. McRoy's rights *in this matter,*"[3] [Emphasis supplied] and contends "That is what I was appointed to represent him on: a three-judge panel." It seems that upon successfully petitioning the court to convert the sentence review petition to a Modification of Sentence Motion or better yet indeed "a new hearing for the defendant to determine whether or not his probation shall be revoked" (whichever way the order is interpreted), counsel feels that he has concluded his assignment. Without belaboring the question, suffice to say we find the argument specious at best. Counsel is appointed to represent the defendant in protecting his rights in every proceeding related to the "matter" of his appointment, especially subsequent proceedings brought about by his own efforts, unless and until relieved by the court. The catastrophic results to an indigent defendant whose attorney takes so narrow a view of his representation are all too apparent in the record before us.

Finally we note that appellant indicated throughout his brief that his appeal was from the Orders of October 17, 1973, March 5, 1974 and April 24, 1974. No timely appeal was entered for either the October 17, 1973 or the March 5, 1974 Orders. We have considered them only as record documents but without opinion as to their validity. They are presumed

---

3. We do not recognize that letter as properly before us in our conclusions on the merits of this case. Md. Rule 826 (c). Considering the inclusion of an appendix consisting of matter outside the record, we call to appellant's attention that neither the contents nor the appendix is permissible content of a brief. Md. Rule 1031 (c).

so by appellant's failure to appeal within the 30 days prescribed. Md. Rule 1012.

Having declined to review the effectiveness of counsel on so sparse a record and finding no error pursuant to the Order of April 24, 1974 from which appellant appeals, we affirm the judgment of the Circuit Court for Montgomery County.

*Judgment affirmed.*