## CHARLES MICHAEL LAU *v.* STATE OF MARYLAND

[No. 363, September Term, 1975.]

*Decided January 5, 1976.*

616

The cause was argued before ORTH, C. J., and GILBERT and LOWE, JJ

*John F. Fader, II, Assigned Public Defender,* for appellant.

*Bruce C. Spizler, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Sandra A. O'Connor, State's Attorney for Baltimore County,* and *Thomas O'Connell, Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

Charles Michael Lau, appellant, pleaded guilty in the Circuit Court for Baltimore County to storehouse breaking. He was sentenced to four years imprisonment. Thereafter the judge suspended appellant's sentence and placed him upon probation for a period of three years. One of the conditions of probation was that appellant was to " . . . spend at least 1 year at Teen Challenge," a vicinal facility of Washington, D. C.

Appellant went to Teen Challenge, but aborted his stay by eloping therefrom. Subsequently he was charged with violation of probation. In the interim between his elopement from Teen Challenge and his appearance at the probation revocation hearing, he was convicted before Judge Land of breaking into a storehouse. As a result of the latter offense he was sentenced to eighteen months in the county jail.

When the violation of probation case was called before the hearing judge, the following took place:

> "MR. O'CONNELL: Call the case of State versus Charles Lau, No. 48738, violation of probation.
>
> THE COURT: . . . State of Maryland versus Charles Michael Lau. Mr. Lau, you are being charged with violation of probation. Are you guilty or not guilty?
>
> MR. LAU: Yes, sir. Sir, I would like to know if I could possibly get a postponement because my attorney, Mr. Covahey, was not notified.
>
> THE COURT: We have been in touch with your attorney, Mr. Covahey, is that correct?
>
> MR. O'CONNELL: Yes, Your Honor. He says he has two settlements this afternoon. He was not informed. I said to him did he want me to request a postponement, and he said have The Court do whatever it wants to do.
>
> THE COURT: He was not, really, your attorney he was appointed by the Public Defender, was he not, Mr. Lau?
>
> MR. LAU: Yes, sir.
>
> THE COURT: What is your plea?
>
> MR. LAU: Guilty, Your Honor.
>
> THE COURT: Guilty?
>
> MR. LAU: Yes, sir.
>
> THE COURT: Enter a plea of not guilty in the record, and let me hear the evidence."

There is no indication in the record that Lau had an opportunity to call witnesses in his own behalf, if any there be, or that he knew of his right to do so. We observe that immediately after the State had examined Lau's probation officer and Lau told the court he had no questions to put to the officer, the judge commenced his questioning of Lau. Basically, the judge's questions were of the "What did I tell you I was going to do to you if you violated probation"

calibre. The transcript discloses that Lau was never sworn
as a witness.[1] During the course of the judge's questioning,
Lau articulated that the Teen Challenge was not for him
because while there they endeavored to "brain-wash" him.
He also told the judge " . . . I never even get in trouble until
I start drinking, and I start drinking, and I just don't stop. I
know it's not an excuse, but, you know — ." At that point the
court abscised further explanation, revoked probation, and
committed Lau to the jurisdiction of the Division of
Correction.

Based upon the quoted events before the hearing judge,
Lau argues that (1) he "was denied [the] assistance of
counsel during the hearing on revocation of probation" and
he " . . . was denied Due Process of Law by the procedures
utilized to terminate his probation."

This Court in *Knight v. State*, 7 Md. App. 313, 324-25, 255
A. 2d 441, 448 (1969), addressing the same subject as now
posed to us, said:

> "In the instant case there is no question that the
> sentence was not deferred; the sentence was
> imposed at the trial at the time of the conviction of
> the appellant of the substantive offense. It was its
> execution which was conditionally suspended. The
> revocation hearing did not involve the imposition of
> a sentence; the hearing judge, upon finding that the
> conditions of suspension of the execution of the
> sentence had been violated, merely struck the
> suspension and the sentence previously imposed
> was then to be executed. He had no power to change
> the sentence. Thus the hearing was not a critical
> stage of a criminal proceeding and *Mempa* [*v.
> Rhay*, 389 U. S. 128 (1967)] was not applicable. As
> *Mempa* was not applicable, the hearing judge was
> not obliged, under the *Mempa* holding, to advise the
> appellant as to his right to counsel or to appoint
> counsel for him if he was indigent. The answer to

---

1. No point is made here of the fact that Lau was not sworn, and we do
not consider it.

the specific question presented by the appellant on appeal is that it was not a denial of his Sixth Amendment constitutional right to have his violation of probation hearing without counsel present."

*Knight,* however, made manifest that Knight had not advanced the argument that he was denied due process of law nor did the record indicate that he was so denied. We pointed out that " . . . at no time . . . [did Knight request] counsel nor did he complain about the absence of counsel." 7 Md. App. at 326. We went on to explain:

" . . . In the circumstances, that the court did not advise the appellant of his right to obtain counsel or to assign counsel to represent him, did not deprive him of his constitutional right to due process." (Footnote omitted). 7 Md. App. at 326.

Subsequent to our decision in *Knight,* the Supreme Court decided *Gagnon v. Scarpelli,* 411 U. S. 778, 93 S. Ct. 1756, 36 L.Ed.2d 656 (1973) and *Morrissey v. Brewer,* 408 U. S. 471, 92 S. Ct. 2593, 33 L.Ed.2d 484 (1972). *Gagnon* interpreted the then Wisconsin probation-parole revocation procedure in the light of the Due Process of Law Clause of the Fourteenth Amendment. The Court in *Gagnon* admittedly drew " . . . heavily on the opinion in *Morrissey* " [2] wherein the Court " . . . held that the loss of liberty entailed is a serious deprivation requiring that the parolee [probationer] be accorded due process." 411 U. S. at 781.

In *McRoy v. State,* 24 Md. App. 321, 330 A. 2d 693 (1975), *cert. denied* May 23, 1975, we considered whether *Gagnon v. Scarpelli, supra,* required a preliminary hearing to determine if appointment of counsel was mandatory at probation revocation hearings and whether, implicitly, *Knight* was still viable. We held that *Gagnon* does not require a preliminary hearing because the Maryland probation procedure is entirely unlike that of Wisconsin. We

2. 411 U. S. at 783.

620

further, in 24 Md. App. at 324-25 n. 1, indicated that *Knight* is alive and well in those cases invoking the Sixth Amendment. Where, as here, it is not the Sixth Amendment right to counsel, but rather the Due Process Clause of the Fourteenth Amendment that is invoked, *Knight* should not be read as sanctioning the refusal to grant the alleged violator's request for counsel unless the criteria of *Gagnon,* as explicated in *McRoy v. State, supra,* is met.

*Gagnon* provides, 411 U. S. at 790-91, that:

> "It is neither possible nor prudent to attempt to formulate a precise and detailed set of guidelines to be followed in determining when the providing of counsel is necessary to meet the applicable due process requirements. . . . Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, *there are substantial reasons which justified or mitigated the violation and make revocation inappropriate,* and that the reasons are complex or otherwise difficult to develop or present. . . . *In every case in which a request for counsel at a preliminary or final hearing is refused, the grounds for refusal should be stated succinctly in the record."* (Emphasis supplied).

Judge Lowe, for this Court, in *McRoy,* 24 Md. App. at 325, n. 1, stated:

> "As concerns the overall rights and plenary hearing to determine whether to revoke probation, the court must provide the minimum standards of due process synopsized from *Scarpelli* and *Morrissey* and outlined with greater explanation in

*Knight v. State,* 7 Md. App. 313, 321. The guidelines set forth by Chief Judge Orth in *Knight* remain viable in the light of *Scarpelli.*

Required are:

1) reasonable notice containing the substance of the charges against probationer;

2) *if counsel is requested, appointment thereof provided the Scarpelli criteria, 411 U. S. at 790, are met. If counsel is denied, insertion of a succinct statement of grounds of refusal in the record;*

3) a hearing, providing an opportunity to be heard and present witnesses and evidence;

4) the right to confront and examine adverse witnesses, unless the court indicates good cause for disallowance of that right;

5) the court's reasons for revoking probation clearly reflected in the record." (Emphasis supplied).

We think Lau's request for the presence of counsel could have been " . . . based on a timely and colorable claim . . . that . . . there are substantial reasons which justified or mitigated the violation and make revocation inappropriate . . . ." We are not, however, to be misunderstood as holding that such reasons are, in fact, *substantial,* as that is properly for the determination, in the first instance, by the hearing judge.

The record in the instant case does not comply with *Gagnon* and *McRoy.* There is no statement in the record as to why counsel was not appointed for Lau. Lau's request for counsel is readily apparent from any fair reading of the above quoted portion of the transcript. Thus, Lau, by his request for the presence of what he believed to be his attorney, in our view, invoked the strictures of *Gagnon* and the hearing judge was thereafter required to insert in the record "a succinct statement of the grounds of refusal" to appoint counsel. The failure of the record to show why

counsel was not appointed necessitates a reversal of the probation revocation.

*Order revoking probation reversed and case remanded for a new hearing.*