569 A.2d 220

**Andre Antoine GANTT**

v.

**STATE of Maryland.**

**No. 762, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

Feb. 7, 1990.

654

Arthur A. DeLano, Jr., Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Richard B. Rosenblatt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., and Stuart O. Simms, State's Atty. for Baltimore City, on the brief), Baltimore, for appellee.

Submitted before BLOOM, ROSALYN B. BELL and CATHELL, JJ.

CATHELL, Judge.

Andre Antoine Gantt was convicted by a jury in the Circuit Court for Baltimore City (Prevas, J.) of possession of cocaine with intent to distribute. A 15–year sentence was imposed, to be served consecutively to a federal sentence for which he was then on parole. On appeal Gantt raises the following questions:

1. Did the trial judge err in ordering that appellant's sentence run consecutively to a federal sentence when, at the time of sentencing, appellant's parole from that federal sentence had not been revoked by the parole authority?

2. Did the trial judge err in permitting a police officer to testify that appellant possessed cocaine with an intent to distribute?

3. Was the evidence sufficient to sustain appellant's conviction?

4. Did the trial judge err in denying appellant's motion for postponement?

### 1.

The correctness of the trial judge's consecutive sentence depends upon a determination of whether a prisoner on parole is *serving* a sentence, i.e., is the sentence in esse?

Parole and probation, though the terminology is used interchangeably, are clearly distinguishable. Sentencing and probation are covered, in general, in Maryland Code (1987 Repl.Vol., 1989 Supp.), Art. 27, § 641A(a), which provides in part:

(1) Upon entering a judgment of conviction, the court having jurisdiction may suspend the imposition or execution of sentence and place the defendant on probation....

\* \* \* \* \* \*

(3) The court may impose a sentence for a specified period and provide that a lesser period be served in confinement, suspend the remainder ... and grant probation....

Article 27, § 641A(b) provides in part:

The *court* may revoke or modify any condition of probation or may reduce the period of probation. [emphasis added]

A distinction between probation and parole is found in the provisions of Maryland Code (1986 Repl.Vol., 1989 Supp.) Art. 41. Article 41, § 4–609(a) provides:

Whenever *any court* shall suspend the sentence of any person ... and shall direct such person ... under the supervision of the Division, it shall be the duty of the said Division to supervise ... and report to said court whether or not the conditions of such probation ... are being

faithfully complied with by such person. [emphasis added]

Article 41, § 4-501(6) provides:

Probation is the conditional exemption from imprisonment allowed ... in the circuit court.... The condition of any order of probation shall be determined *solely* by the judge granting the same. [emphasis added]

Article 41, § 4-501(5), provides that parole is

a conditional release from imprisonment.... [It] entitles the recipient thereof to leave the institution in which he was imprisoned, and to *serve* the remainder of his term outside the confines thereof.... Each such paroled prisoner shall be deemed to remain in legal custody until the expiration of his full, undiminished term; and upon having violated the conditions of his parole, shall be remanded to the institution from which he was paroled. [emphasis added]

Article 41, § 4-511, specifies:

(a) If an inmate released on parole is alleged to have violated a condition of parole, one Commission member shall hear the case on revocation of the parole ....

❖ ❖ ❖ ❖ ❖ ❖

(d) [I]f the order of parole is revoked, the prisoner *shall* serve the remainder of the sentence originally imposed unless the Commission member ... in his discretion, grants credit for time between release on parole and revocation of parole. [emphasis added]

Appeals of parole revocation decisions are to the circuit court, on the record, in the basic nature of an administrative appeal. Article 41, § 4-511(e).

We said in *McRoy v. State*, 24 Md.App. 321, 330 A.2d 693 (1975), that

the controlling distinction is that a probationer has been conditionally released, but remains the responsibility of the sentencing judge. The function of the Department of Parole and Probation is limited to supervising, on the court's behalf, conformity with the probation conditions.

It has no direct authority over probation in the form of revocation power such as it has over parolees.

*McRoy* at 328, 330 A.2d 693 (citation omitted).

The Fourth Circuit described the difference between judicial probation and administrative parole in *Alvarado v. McLaughlin*, 486 F.2d 541, 544 (4th Cir.1973), stating:

"Penalty" in the statute refers to and embraces simply the sentence imposed by the Court. That sentence is in no way voided or "abated" by the subsequent grant of administrative parole. Parole is not "a suspension of sentence".... [1] [citations omitted]

Mr. Justice Blackmun, in a dissenting opinion involving the effect of a saving statute on a general parole statute, stated that:

As the Fourth Circuit aptly has observed, parole "is not a release of the prisoner from all disciplinary restraint, but is rather merely 'an extension of the prison walls'; and the prisoner while on parole remains 'in the the legal custody and under the control of' the Parole Board."

*Warden, Lewisburg Penitentiary v. Marrero*, 417 U.S. 653, 94 S.Ct. 2532, 2540, 41 L.Ed.2d 383 (1974) (citations omitted). .

Appellant cites as authority for his position *Johnson v. State*, 40 Md.App. 591, 392 A.2d 1157 (1978); however, *Johnson* is easily distinguishable from the present case. *Johnson*, and also *Alston v. State*, 38 Md.App. 611, 379 A.2d 754 (1978), involved reneging on plea bargain agreements, or the making of plea bargain agreements that were impossible to perform.

---

1.   The right of the judge to provide for parole [probation] as a part of his sentence is quite different from the "availability of parole under the general parole statute"; the reason is that one is a part of the sentence or "penalty", the other is an administrative action "made long after sentence has been entered and the prosecution terminated." *See, United States v. Huguet* (2d Cir.1973) 481 F.2d 888, 891.
Alvarado, 486 F.2d at 544, n. 8.

The facts in *Johnson* indicated that a plea arrangement was agreed upon whereby the defendant's Maryland sentence would be served concurrently with a Pennsylvania sentence which the defendant was expected to serve as a result of an anticipated Pennsylvania parole revocation. A key ingredient of the plea bargain was that he would actually serve the Maryland time concurrent with the Pennsylvania time *in the Pennsylvania prison system.* The record reflected that the Pennsylvania authorities had not revoked his parole; thus there was no actual Pennsylvania *prison* time. The court noted that the subsequent events could not have been contemplated, and then held:

> In addition, appellant is clearly being denied an essential element of the bargain, to wit: his immediate return to Pennsylvania. Whether or not the Maryland courts have the power to return appellant to Pennsylvania to serve his time there is beside the point. The crucial consideration here is that appellant has not been given that which he justifiably contemplated as the *quid pro quo* for his guilty pleas.

*Johnson, supra* at 597, 392 A.2d 1157.

In *Johnson* we also said as dicta:

> It is entirely conceivable that Pennsylvania could either wait until the Maryland time has been served before reimposing the balance of appellant's sentences or reimpose those sentences so as to run consecutively to those now being served in Maryland.

*Id.* at 597, 392 A.2d 1157. When discussing the uncertainty as to the intent of Pennsylvania authorities we, because we were dealing with a breach of a plea agreement, did not fully consider that such language might be interpreted in a manner inconsistent with the fact that a person on parole (as opposed to probation) is, as we have said, actually serving his sentence outside the prison walls. To the extent that the dicta in *Johnson* has been interpreted to indicate that a person on parole *is not* serving a sentence, that interpretation is repudiated.

We said in *State v. White,* 41 Md.App. 514, 515, 397 A.2d 299 (1979), that

> a judge must relate the sentence he imposes to the *status quo* at the moment of sentencing.... He may not, however, presume to bind the future. To do so would be, *ipso facto,* to usurp the sentencing prerogative of *some other judge* operating in a near or distinct time yet to be. [emphasis added]

We later noted in *DePietrantonio v. State,* 61 Md.App. 528, 487 A.2d 676 (1985), that our language in *White* had, in dealing with subsequent sentencing as to probationers, created confusion and that we were "extirpat[ing] it at its root." *DePietrantonio* was concerned with the imposition of sentences on a defendant who was then on probation. When we referred to the necessity of there being a sentence, then in esse, in order for there to be imposed a consecutive sentence, we were in no way asserting that a parolee is not serving a sentence in esse. We said in that case that "[a] judge cannot imbue the sentence he is then imposing, in any controlling fashion, with power over the future judicial actions of others." *Id.* at 533, 487 A.2d 676. Parole and parole revocations are not judicial acts. They are administrative acts concerned primarily with removing a person from within the walls of prison, to serve his sentence elsewhere, or to return him behind the walls upon a violation of the administrative conditions of parole. Parole is a preliminary step to release by administrative authorities, not a sentencing act by a judge.

At the sentencing hearing, appellant's counsel inquired of Judge Prevas, "[a]re you allowed to run it [the sentence] consecutive to a sentence he has not yet received?" The trial judge stated "[w]hen you're on parole, you're actually serving your sentence on the street ...." We agree.

Accordingly, we hold that a person who is on parole is actually serving a sentence outside the prison walls. Thus, a judge sentencing a parolee on a subsequent offense may make that subsequent sentence consecutive to the sentence

the parolee is serving, i.e., the sentence from which he is on parole.

We emphasize that pursuant to the provisions of Art. 41, § 4–517, any Maryland parolee convicted of a new offense while on parole is deemed to have been sentenced consecutively to the parolee's prior sentence, unless the sentencing judge expressly directs otherwise.

Sentencing judges should be cognizant of the possibility that if the parole authorities (especially in foreign jurisdictions) do not revoke his parole—or until they do—such a defendant given a consecutive sentence to be served upon the termination of an earlier sentence may well remain free from physical restraint until the conclusion of that prior sentence or until a retake warrant is issued by the Department of Parole and Probation.

2.

At trial, Officer Morcomb testified over objection that the quantity of small and large bags of cocaine indicated that the appellant "was actually selling drugs." He was asked the basis for his opinion and responded, "due to the quantity of narcotics that were recovered from the bag."

Officer Morcomb had previously been offered as an expert "to testify as to the numbers, the sizes and the expense of them; would be in the showing of the intent to distribute based upon the sheer packaging of them...." After extensive voir dire the court accepted Morcomb as an expert.[2] On appeal, Gantt did not challenge the trial court's acceptance of Officer Morcomb as an expert.

Initially, we observe that the following exchange took place without objection, and that it immediately preceded the testimony which Gantt asserts was objectionable:

---

**2.** The appellee in its brief informs us that "it is of no moment that the officer was not qualified as an expert." As we pointed out, according to the transcript we have reviewed, he was so qualified.

Q. In your experience as a narcotics seizing officer, as an expert in that area, from—you've arrested purchasers?

A. Yes, I have.

Q. —and from the purchasers you've arrested, how many bags of cocaine are normally recovered from individuals?

A. Usually one.

Q. And in your experience as a narcotics officer, how many bags are recovered from a distributor of narcotics?

A. Usually more than 10.

There was no objection to this testimony.[3] There had already been testimony that the number of bags of contraband involved in the case at bar totalled 13 small bags and 11 big bags.

The Court of Appeals in *Simmons v. State*, 313 Md. 33, 542 A.2d 1258 (1988), said that:

Expert testimony is admissible notwithstanding that it is presented in the form of an opinion relating to an ultimate issue.

\* \* \* \* \* \*

The critical determination is *whether the jury will be aided by the opinion,* not whether the jury could draw the inference or conclusion from the testimony independent of the opinion.

\* \* \* \* \* \*

[A] trial judge is given broad discretion in ruling on the admissibility of expert testimony. Seldom will the decision in this regard constitute grounds for reversal.

*Simmons* at 42–43, 542 A.2d 1258 (emphasis in original, citations omitted).

---

3. The appellant was charged with possession of cocaine with intent to distribute, not actual distribution, thus *this* testimony related to the ultimate issue. It was admitted without objection. Therefore, the real ultimate issue testimony was already before the trier of fact. The additional testimony was cumulative.

While upholding a trial judge's refusal to let in such ultimate issue testimony on the grounds that it would not have aided the jury because it was not sufficiently scientifically accepted under *State v. Collins*, 296 Md. 670, 464 A.2d 1028 (1983), we said in *White v. State*, 66 Md.App. 100, 502 A.2d 1084 (1986), that "[e]xpert opinion which will aid the trier of fact is admissible even on issues of 'ultimate fact.'" *Id.* at 114, 502 A.2d 1084 (citation omitted).

Judge Prevas, in informing the jury of his acceptance of the officer as an expert, said:

A court can allow a person to testify as an expert witness and, therefore, go beyond merely reciting what they saw or heard ... in an area where it would be helpful to the jury to know something that they did not necessarily have in their own experience.

Thus, he opined that the officer's testimony would aid the jury. He was correct. For the reasons stated, we perceive no reversible error.

### 3.

Gantt states that the evidence was insufficient to sustain his conviction. Both Officer Morcomb and Officer Hatcher testified that they observed the appellant throw a red bag down near a parked car. Officer Hatcher retrieved the bag. It contained 13 small baggies of cocaine and 11 large baggies of cocaine. The substance was analyzed and found to be cocaine. Expert testimony indicated that distributors normally possess 10 or more bags of cocaine.

The jury certainly could, and did, find every element of the crime beyond a reasonable doubt when the evidence was viewed in the light most favorable to the prosecution. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Tichnell v. State*, 287 Md. 695, 415 A.2d 830 (1980).

### 4.

Gantt's allegation that the trial court erred in denying him a postponement causes us some concern. We

discuss first the facts that relate to the request for a postponement.

The docket entries reflect that appellant's counsel, Ms. Ranier, entered her appearance in the circuit court on November 29, 1988 (or earlier).[4] The facts indicate that on January 26, 1989, she put on the record that "we [Public Defender's office] really couldn't be in this case to begin with" and that the defendant was told "he was to notify me by February 14th if he needed our services."

She later said that on February 10th "we [Public Defender's office] attempted to call him ... on his phone." She then sent him a letter on February 10th, asking him if he had retained a private lawyer and, if so, requesting information about the lawyer. She further informed Gantt that if he didn't have a private lawyer he had to come to her office on February 13th so that the matter could be prepared for court. At that time trial was scheduled for March 3rd.[5] In her February 10th letter she also requested that appellant furnish her with a list of witnesses, their addresses and telephone numbers. The defendant admitted receiving this letter. He nevertheless failed to respond. Ms. Ranier testified that Gantt did not show up on the 13th; she then sent him another letter on the 14th or 15th of February, in which she stated: "[Y]ou were to advise me by February 14th if you needed my services to represent you.... Since I have not heard from you, I can only assume that you have retained private counsel to represent you. If this is not true, you must notify me immediately as I am doing nothing in preparation for your trial." Ms. Ranier did not hear from Gantt and did not prepare for trial.

At trial, she first requested permission to withdraw her appearance. The request was denied by a motion's judge. She also informed the trial court of those facts, which we

---

**4.** Ms. Ranier stated (mistakenly) that her appearance was entered in January.

**5.** Mr. Gantt apparently failed to appear on March 3rd when his case was called.

have set out, which she asserted caused her to be unprepared for trial. She again requested a postponement. It was denied.

After counsel's motion to withdraw was denied, the trial judge opined that "[s]he has read the offense report, and Ms. Myers has the witnesses available here for Ms. Ranier to cross-examine [interview], and I'll issue body attachments for any witnesses[6] that she wants to bring in and give her time to interview that person before she puts them on the stand."

Judge Prevas then addressed the appellant, telling him that he had a right to discharge his attorney "or waive his right to counsel," saying:

You understand that even though Ms. Ranier's not satisfied with how ready she is because of the fact that you never talked to her and never answered her letters, that she's going to have to represent you today and you're going to trial today, you have the right—limited right to fire her and represent yourself. You don't intend to do that. Is that right?

\* \* \* \* \* \*

[Y]ou've got two choices. You've got Ms. Ranier, who is not real happy about the fact that you didn't give her a lot to work with, or you can have no lawyer whatsoever and try the case all by yourself. Which of those three options do you want to do? [7]

THE DEFENDANT: Well, I think I may have to go with her, then.

The following exchange then occurred between counsel and the court:

---

**6.** Appellant's counsel had informed the motion's judge that defendant had two witnesses he wanted to call. One of these witnesses, Derrick Compton, defendant's only companion at the time of the offense, was found and did testify on the second day of the trial.

**7.** The trial court also informed him that if he had another attorney who was prepared to go to trial that would be "fine."

MS. RANIER: ... I still am not comfortable and I don't feel competent in trying a case by the seat of my pants, which is how I feel I am doing this.

THE COURT: Well, the defendant forced you to. It's not your fault.

On the issue of postponement, the trial judge also stated:

Well, I am not going to tolerate his delaying this case just because the defendant plays games with his lawyers.

and

Well, I'm going to see what the Court of Appeals thinks about the complicity of the Public Defender's Office and the defendants in delaying cases. If you're assigned and you refuse to get involved in the case just because of your client's intransigence or because the Public Defender is overloaded and has a lot of work to do, then somebody has to represent the defendant and he's got to go to trial.

All he's got to do is continue to refuse to talk to you, and you will always be unprepared, and the case will languish in the system.

While the legal question in *Fowlkes v. State*, 311 Md. 586, 536 A.2d 1149 (1988), primarily involved the waiver of counsel, the factual situation is somewhat analogous to that in the case at bar. That Court said:

The interplay among the right to counsel, waiver of the right to counsel, and the *Faretta*[8] right of self-representation, has posed problems when, shortly before or at the beginning of trial, a defendant makes an unmeritorious demand for the discharge of current counsel and for the appointment or retention of different counsel, and where, as is usually the situation, the appointment or retention of new counsel would require a trial postponement.

*Id.* at 589, 536 A.2d 1149. Ms. Ranier, whose appearance had been entered at least 100 days before trial, asserts that

---

8. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

defendant's representations that he was going to retain private counsel and his unresponsiveness in replying to her entreaties to him to contact her in order to prepare a defense, resulted in her being unprepared and, accordingly, the case should have been postponed.

The facts in *Fowlkes* were as follows: On August 28, 1984, Fowlkes was notified of his right to counsel. On his first trial date his case was postponed. At least by that date—December 6, 1984, he was represented by a public defender. His next trial date was March 13, 1985, at which time he was still represented by a public defender. During proceedings on that date the defendant said, "I don't think she is any help to me anyway," and requested another attorney. Later the court was advised that the defendant objected to being represented by the public defender, and to the trial going forward under any circumstances.

*Counsel*, in the case at bar, not appellant, objected to the case going forward because *she* was not prepared—basically for the reason that the defendant had failed to assist her in his defense. Her appearance had been entered as early as November 15, 1988, and no later than November 29, 1988. As early as the 19th of August 1988, Gantt had acknowledged that he had received his notice of right to counsel, which notice also informed him, in paragraph 4, that a lawyer could be helpful by:

    a.  explaining the charges in this paper;

    b.  telling you the possible penalties;

    c.  helping you at trial;

    d.  helping you protect your constitutional rights; and

    e.  helping you get a fair penalty if convicted.

Paragraph 5 of the notice informed the appellant that:
Even if you plan to plead guilty, a lawyer can be helpful.[9]

---

9. Notice of Advice of Right to Counsel, signed by appellant on 8–19–88. The Criminal Information served upon him also gave him such

After being appointed to represent him, defense counsel made the fruitless efforts we have described to obtain appellant's assistance in his own defense.

The *Fowlkes* Court stated:

Although the right to counsel generally embodies a right to retain counsel of one's choice, a defendant may not manipulate this right so as to frustrate the orderly administration of criminal justice....

Consequently, at some point, unless the defendant can show a meritorious reason for the discharge of current counsel, the appointment of substitute counsel is simply not an option available to the defendant. At such a point, a trial court may constitutionally require a defendant to choose between proceeding with current counsel and proceeding pro se....

*Fowlkes, supra* at 605–06, 536 A.2d 1149 (citations omitted).

Judge Prevas determined that appellant had no meritorious reason for not assisting his counsel in his own defense, and essentially required the defendant to choose between proceeding with the Public Defender or proceeding pro se, unless he had another attorney then ready to proceed.

We said in *Argabright v. State*, 75 Md.App. 442, 459–60, 541 A.2d 1017 (1988), in discussing discharge and appointment of counsel:

A request to discharge counsel is ordinarily motivated by an accused's contention that he or she is not receiving effective assistance of counsel or by his or her desire to enhance the quality of the assistance he or she is receiving; it is, in other words, addressed to the accused's right to effective assistance of counsel.[10]

---

advice. Both informed him that he could not wait to the date of trial to seek legal representation.

**10.** We acknowledge that experienced criminal litigants may have other motives unrelated to the quality of representation, but associated instead with the manipulation of the criminal justice system to that litigant's advantage.

There was, in the instant case, no discharge of appointed counsel, but a failure of the defendant to cooperate with counsel. To hold, under these circumstances, that a continuance must be granted upon counsel's assertions of defendant's uncooperativeness would lead inevitably to refusal of experienced defendants to cooperate with counsel.

*Greene v. State*, 233 Md. 274, 196 A.2d 454 (1964), involved an attempt by trial counsel to withdraw his appearance based on a different type of client uncooperativeness—the failure to pay his fee. The Court said:

> [T]he lawyer asked leave to withdraw. The accused did not join in the request. The lawyer's request was denied, as coming too late.... The appellant now claims the denial was prejudicial error. We find no abuse of discretion here.

*Greene, supra* at 276, 196 A.2d 454 (citations omitted).

A request for withdrawal by counsel due to disagreement with a client was one of the matters addressed in *Jackson v. State*, 214 Md. 454, 135 A.2d 638 (1957), where the Court of Appeals said at 459, 135 A.2d 638:

> The record discloses that when the trial was about to commence, counsel for the accused requested the court to permit him to withdraw from the case, stating there was a difference of opinion between counsel and the appellant concerning the conduct of the trial. Due to the tardiness of the request, it was denied.

The case involved the withdrawal of counsel and, while the Court of Appeals affirmed for other factual reasons, it stated, "[o]rdinarily a litigant has the right to change or substitute attorneys at any stage of the proceedings, if it will not unduly prejudice the other side of the litigation or

---

The record before us discloses that appellant is an experienced criminal litigant. While awaiting trial on this charge he was arrested and incarcerated on other charges. He was, at the time of the instant offense, on parole serving the remaining 11 years of a prior sentence. He had prior convictions for distribution of narcotics, possession of narcotics, breaking and entering, housebreaking, contempt of court and bank robbery.

interfere with the administration of justice." *Id.* at 460, 135 A.2d 638.

We said in *McRoy v. State,* 24 Md.App. 321, 330 A.2d 693 (1975), in commenting on defense counsel's claim that his appointment was limited to a specific proceeding:

> In conclusion, we feel constrained to comment upon appellant's counsel's contention that he was unprepared for the revocation hearing, because he was not properly appointed.... Without belaboring the question, suffice to say we find the argument specious at best. Counsel is appointed to represent the defendant in protecting his rights in every proceeding related to the "matter" of his appointment.... The catastrophic results to an indigent defendant whose attorney takes so narrow a view of his representation are all too apparent in the record before us.

*McRoy, supra* at 333, 330 A.2d 693.

The trial court refused to grant a continuance to a defendant for the purpose of obtaining the services of the Public Defender in *Moreland v. State,* 68 Md.App. 78, 510 A.2d 261 (1986). We determined that there had not been a valid waiver of counsel. In that case we said:

> If the defendant satisfactorily explains the absence of a private attorney based on his inability to afford one, the court must attempt to determine why he is not represented by the public defender. In order for a defendant to show that he has a meritorious reason for not being represented by the public defender, he must, at a minimum, show that he made a timely request and that he was refused representation.

*Moreland, supra* at 82, 510 A.2d 261 (footnote omitted). We said in discussing the facts in *Moreland:*

> The court also gave appellant sufficient time to retain an attorney. The question is whether the appellant had a meritorious reason for not securing counsel.... Thus, the question is reduced to whether appellant had a merito-

rious reason for not obtaining representation by the public defender.

*Moreland, supra* at 83, 510 A.2d 261. We remanded to the trial judge to conduct proceedings as to the merit of Moreland's reasons for not obtaining counsel.

We also find the recent decision in *U.S. v. Kosko,* 870 F.2d 162 (4th Cir.1989) to be helpful. The defendant in *Kosko* absconded from pretrial release. His trial date had been set for January 25, 1988. Because of his absconding, his original trial attorney moved for leave to withdraw, which was granted on January 21, 1988. On that date, "new" counsel was appointed to represent the defendant. That attorney was then provided with discovery and briefed by the U.S. Attorney. The day before trial, the defendant turned himself in and his counsel had an opportunity to meet with him for about 45 minutes. On the morning of trial, counsel moved for a one-week continuance in order to prepare for trial. It was denied.

The appellate court, in affirming the trial court's action, discussed the holding in *U.S. v. Gaither,* 527 F.2d 456 (4th Cir.1975), stating:

> In so holding the Court indicated that a defendant is "in no position to complain of a situation for which he was 'intentionally and knowingly responsible.'"

*U.S. v. Kosko,* at 163 (citations omitted).

Gantt, in the case sub judice, had the public defender as counsel. The appropriate inquiry is whether there was sufficient merit in appellant's reasons and those of his counsel for being unprepared for trial. We conclude that their reasons lacked merit and we explain.

Not only did Gantt know about the public defender system, he had had such an attorney for some time. He apparently chose not to cooperate with her. He also knew, because it had been explained to him, that he had to be ready for trial, and he knew when his trial date was. His public defender attorney made several appeals to him for

his assistance in preparing for trial. Whatever Gantt's reason, he voluntarily declined to aid in his defense.

We said in *Moreland:*

If the facts show that appellant was at fault for not securing public defender assistance, the trial court would be justified in determining that appellant lacked a meritorious reason for not having counsel and consequently could find waiver....

*Moreland, supra* [68 Md.App.] at 84, 510 A.2d 261 (footnote omitted).

Judge Prevas, in the case sub judice, determined that there was no meritorious reason for appellant's lack of cooperation with his assigned counsel, and thus appellant had no meritorious reason for not being ready for trial. Based upon our review of the facts contained in the record, we concur. Judge Prevas denied the request for continuance. We perceive no error in that denial.

We are not unmindful that circumstances such as those that existed in this case present a dilemma to the assigned public defender. When counsel prepares for trial only to be supplanted by private counsel at the last moment, counsel's effort is wasted, causing an additional burden on the already overburdened Public Defender's office. When, as was done in the instant case, counsel makes minimal preparations and private counsel's appearance is not entered, the Public Defender must request an eleventh hour postponement in order to make adequate preparation. The last option of course creates great inconvenience to the courts, summonsed jurors, witnesses and to the State, as well. It also seriously interferes with the State's right to a fair trial. If such instances were rare, the method of resolving the dilemma may be of little significance. We note, however, that in these times of experienced, and sometimes sophisticated criminal litigants, such instances are not rare.

We are sure that such instances burden the office of the Public Defender as they do the courts. We note, nevertheless, that the duties of public defender counsel, and defense

counsel generally, are set out by the Maryland Rules, the Rules of Professional Responsibility and by statute.

Maryland Rule 4–214(b) states in part:

> When counsel is appointed by the Public Defender or by the court, representation extends to all stages in the proceedings.... Representation by the Public Defender's office may not be withdrawn until the appearance of that office has been stricken pursuant to section (c) of this Rule.

Section (c) provides in pertinent part:

> A motion to withdraw the appearance of counsel shall be made in writing or ... in open court.... If no other counsel has entered an appearance for the defendant, leave to withdraw may be granted *only by order of court.* The court may refuse leave to withdraw an appearance if it would unduly delay the trial of the action .... [emphasis added]

Maryland Code (1986 Repl.Vol.) Art. 27A, entitled "Public Defender," provides in § 4(d) that:

> Representation ... shall extend to all stages in the proceedings ... and shall continue until the final disposition ... or until the assigned attorney is relieved by the Public Defender or by order of the court in which the cause is pending.

Rule 1.1 of the Maryland Rules of Professional Conduct requires an attorney to undertake preparation reasonably necessary for the representation. Rule 1.3 requires that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." [11]

---

**11.** We nevertheless observe that counsel is not dilatory when counsel's failure to prepare a defense and make motions, etc., is occasioned by the degree of defendant's refusal and/or failure to cooperate in the defense being prepared for the defendant—as occurred in the instant case. It must be recognized, however, that once counsel's appearance is entered, and so long as it remains entered, it is counsel's duty both to his client and as an officer of the court to be prepared for all scheduled proceedings.

Accordingly, we hold that when defense counsel's request for a continuance on grounds that more time is needed to prepare for trial is based in large part on the defendant's refusal or failure to cooperate in his defense, a denial by the trial judge is not reversible error. This is especially so, where, as here, the record reflects that there was a sufficient period of time between appointment and trial for the preparation of a defense, where the record reflects defense counsel's diligent and continuing efforts to obtain cooperation from the defendant, and where, given the circumstances, a vigorous defense was mounted by defendant's attorney, Ms. Ranier.

For the reasons we have stated, we affirm.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.