487 A.2d 676

**Wayne DiPIETRANTONIO**

v.

**STATE of Maryland.**

**No. 734, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

Feb. 7, 1985.

Gary S. Offutt, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on brief), for appellant.

Valerie V. Cloutier, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, and Andrew L. Sonner, State's Atty. for Montgomery County and Robert Dean, Asst. State's Atty. for Montgomery County, Rockville, on the brief), for appellee.

Submitted before MOYLAN, ADKINS and BLOOM, JJ.

MOYLAN, Judge.

In dealing with the at-times tangled problem of whether, following a revocation of probation, a reimposed sentence of confinement, which had earlier been suspended, may be made consecutive with another sentence of confinement that has been imposed during the interim between the earlier suspension and the later reimposition, a source of continuing confusion has been our opinion in *State v. White*, 41 Md.App. 514, 397 A.2d 299 (1979). We made an effort, with but partial success, in *Raines v. State*, 54 Md.App. 543, 458 A.2d 1264 (1983), and *Hicks v. State*, 61 Md.App. 183, 485 A.2d 1021 (1984), to "write around" *White*. It is now our considered judgment that the cleanest way to remove confusion is to extirpate it at its root. Accordingly, this appeal is the occasion to revisit *State v. White*, to reaffirm that part of its analysis which we still believe to be correct and explicitly to disavow that part of its analysis which we now believe to have been incorrect.

The appellant, Wayne DiPietrantonio, was initially sentenced on July 1, 1982, by Judge Richard B. Latham in the Circuit Court for Montgomery County. Judge Latham later characterized the assault and battery in that case as "without a doubt one of the most severe battery cases that I have encountered in 14½ years of being a judge." Judge Latham sentenced the appellant to 10 years of incarceration but suspended the execution of 8½ years of that sentence and placed the appellant on probation for three years, the three-year probationary period to commence "upon release" from confinement.

The appellant had finished the period of actual confinement and was serving the three-year probationary period when, on May 2, 1984, he entered pleas of guilty to 1) a first-degree rape and 2) an attempted first-degree rape. Judge William C. Miller, in the Circuit Court for Montgomery County, sentenced the appellant to 25 years for each conviction, the two sentences to be served consecutively with each other. No reference was made by Judge Miller (quite properly, it turns out) to the earlier sentence by Judge Latham.

On May 29, 1984, Judge Latham found that the appellant, by virtue of those intervening criminal acts, had violated the terms of his probation. Judge Latham revoked the probation and ordered that the appellant serve five years of the earlier suspended sentence of confinement. He further ordered that this five-year reimposed sentence of confinement be served consecutively to the sentences imposed by Judge Miller. It is from the consecutive aspect of this reimposed sentence of confinement that the appellant appeals.

The appellant looks exclusively to *State v. White, supra,* and *Raines v. State, supra,* for solace. Notwithstanding whatever those two cases may have said, *Kaylor v. State,* 285 Md. 66, 400 A.2d 419 (1979), is dispositive of the issue in the appellant's disfavor. *Kaylor* dealt with two cases, consolidated for review. In the case of Kevin Kaylor himself, the execution of Sentence A was suspended and Kaylor was placed on probation, even as was the appellant at bar. Kaylor was subsequently convicted of Crime B and an unsuspended sentence of confinement was imposed for Crime B, even as in the case at bar. Even more subsequently, Kaylor was found in violation of probation and the incarceration under Sentence A was reimposed to be served consecutively with Sentence B, even as in the case at bar. Precisely the same sequence of 1) a suspended execution of Sentence A, 2) an actual, unsuspended confinement under Sentence B, and 3) a reimposed confinement under Sentence A to be served consecutively to Sentence B, was involved in

the case of the co-appellant, John Butts. In upholding the legitimacy of both instances of consecutive sentencing upon the revocations of probation, the Court of Appeals concluded, at 285 Md. 75, 400 A.2d 419:

"We conclude that it was within the trial court's discretion to decide whether the appellants' sentences should run concurrently or consecutively. Under the circumstances of these cases there was no abuse of that discretion in requiring those sentences to be served consecutive to the sentences they were serving when probation was revoked."

Although it seems probable that *Kaylor* implicitly overruled *State v. White,* one might hesitate to reach that conclusion (as the appellant here did and as we ourselves did in *Raines v. State, supra,* and *Hicks v. State, supra* ) because 1) *Kaylor* did not have the occasion to mention *State v. White* by name or even by reference and 2) *Kaylor* did not undertake, perhaps wisely, to explore the metaphysical nuances of consecutive sentencing in all its various permutations of sequence.

By the same token, our own recent decision in *Hicks v. State, supra,* would appear both 1) to be dispositive of the appellant's contention in his disfavor and 2) to have implicitly overruled any suggestions to the contrary in *State v. White.* In *Hicks,* the defendant received a suspended execution of Sentence A and was placed on probation; was subsequently given an unsuspended term of confinement under Sentence B; and even more subsequently, following a revocation of probation, was given a reimposed term of confinement under Sentence A to be served consecutively with Sentence B. We confirmed the legitimacy of that sentencing to consecutive terms of confinement. Our possible shortcoming in *Hicks* was in making the effort to reconcile some contradictory language in *State v. White* by distinguishing it, rather than in administering a clean *coup de grâce.* The time is now ripe for the *coup de grâce.*

We were absolutely correct in *State v. White* in pointing out that in terms of control, "there is a marked advantage to batting last." We reaffirm our analysis as to the critical significance of the sentencing sequence:

> "The answer is that the sentencing sequence is controlling. A judge must relate the sentence he imposes to the *status quo* at the moment of sentencing. He may deal with the present or the past as concrete reality."

41 Md.App. at 515, 397 A.2d 299.

Our mistake in *State v. White* followed immediately as we then misidentified "the *status quo*" to which a subsequent sentencing judge must relate. The ensuing statement in *State v. White* erroneously included the bracketed and underlined words, which we now repudiate:

> "He may make his sentence concurrent with or consecutive to whatever other sentence then exists, [*either 1*)] actually being served [*or 2) in suspension but with ever-present potentiality for the lifting of that suspension*]. He may not, however, presume to bind the future. To do so would be, *ipso facto*, to usurp the sentencing prerogative of some other judge operating in a near or distant time yet to be."

*Id.* The proper direction to the subsequent sentencing judge is that he may make his sentence concurrent with or consecutive to whatever other unsuspended sentence of confinement then exists.

At whatever point we may be in the sentencing sequence, unless there is a sentence then being served (or unequivocally scheduled to be served) [1]—a sentence the execution of

---

1. It would be awkward and is unnecessary to repeat this parenthetical qualification on every occasion when we speak of an "actual sentence" or "sentence then being served." Let there be no doubt, however, that the parenthetical qualification is implicitly present whenever we use those phrases, in the course of this opinion. This qualification is necessary to cover the situation, rare in state courts but not infrequent in federal courts (whose sentences may also sometimes become entangled in our troubled sequences), wherein a sentencing judge might, for instance, impose on February 1 a term of incarceration for five years

which is *in esse* and not merely *in posse* [2]—the adverbs "concurrently" and "consecutively" are but empty gestures. A judge cannot imbue the sentence he is then imposing, in any controlling fashion, with power over the future judicial actions of others. His sentence may not be consecutive to or concurrent with a term of confinement which is not then *in esse.*[3] The first judge to impose an actual sentence of confinement, the execution of which is unsuspended, creates the *status quo* to which a later sentencing judge must explicitly or implicitly relate. The later sentencing judge may be imposing a totally new sentence upon a totally new conviction or he may be reimposing an earlier suspended

---

but defer, until March 1, the beginning of the service of that sentence, in order to allow the prisoner-to-be a short period of grace to put his personal affairs in order. Even as of February 1, there would be an actual sentence to confinement, the execution of which was unsuspended—a sentence of confinement *in esse.* When we speak, in this opinion, of a mere possibility of confinement—a sentence *in posse* —we are not referring to merely deferred confinement, *which will be at a time certain,* but rather to suspended confinement, *which* (unless certain conditions are breached) *may never be.* In terms of the example above, there would be a sentence *in esse,* taking its place in the sequential batting order and to which a subsequent sentencing judge could relate, as of the imposition of the unsuspended sentence on February 1; its status as a sentence *in esse* would not have to await the arrival of the prisoner at the jail door on March 1.

**2.** Article 27, § 641A provides that the sentencing judge may either 1) suspend the imposition of sentence or 2) impose a sentence but suspend all or part of its execution. Everything dealt with in this opinion is within the limited context of that second alternative. Where the very imposition of sentence has been suspended, there is no sentence at all. In the context here pertinent of suspending the execution of an imposed sentence, our use of the modifying words and phrases—"actual" or "potential," *"in esse"* or *"in posse"*—has exclusive reference to the execution of a sentence of incarceration which has been imposed (even if its execution has been suspended). For an excellent discussion of the distinction between 1) suspending the imposition of sentence and 2) suspending the execution of sentence, *see Hanson v. Hughes,* 52 Md.App. 246, 447 A.2d 892, *aff'd,* 294 Md. 599, 451 A.2d 664 (1982).

**3.** Nothing said herein, of course, affects in the remotest way the judge's discretion to make concurrent or consecutive multiple sentences he is imposing on a single occasion.

execution of a sentence. In either event, he takes his place in the sequential batting order as of the moment he imposes (or reimposes) an actual sentence of incarceration to be executed.

In the case at bar, the July 1, 1982, sentencing by Judge Latham upon the conviction for battery clearly was not, and could not have been, concurrent with or consecutive to anything. The appellant's theory of the case, plausible enough in view of his reliance on *State v. White*, is that that July 1, 1982, sentencing by Judge Latham took its firm place in the batting order as Sentence A. Having entered upon its suspended phase, what remained was a sentence of confinement the execution of which was merely *in posse* when, on May 2, 1984, Judge Miller pronounced Sentence B. According to the appellant's theory, Sentence B then had to relate, consecutively or concurrently, to Sentence A's incarceration *in posse*. When, still according to that theory, Judge Miller did not explicitly order his 50-year sentence to be consecutive to that incarceration already *in posse*, it became, under the prevailing rule of lenity, automatically concurrent. Under that theory, Judge Latham's subsequent reimposition of the earlier suspended execution of sentence, Sentence A revisited, was an unlawful modification upward, since he was making consecutive that which, according to the appellant's theory, was already concurrent. As we have now held, however, the reliance upon *State v. White* was misplaced and this theory, therefore, has utterly no support in law.

Under the correct theory of law, according to *Kaylor v. State, supra,* and *Hicks v. State, supra,* the true sequence of events was as follows. Since no incarceration was actually being served or was unequivocally scheduled to be served on May 2, 1984, when Judge Miller sentenced the appellant to 50 years, that sentence by Judge Miller was not, and could not have been, concurrent with or consecutive to anything. As of that moment, there was no other sentence of incarceration *in esse*. The earlier suspended execution of sentence—a sentence the execution of which

was merely *in posse*—simply did not count as a then concrete reality to which Judge Miller could have related his sentencing of May 2, 1984. If he had attempted to make that May 2, 1984, sentencing either concurrent or consecutive to the earlier sentence, the execution of which was in suspension, it would have been empty verbiage, signifying absolutely nothing.

The first occasion that any sentencing judge had in the sequence of this case to make anything concurrent or consecutive was on May 29, 1984, when Judge Latham revoked the appellant's probation and thereby revoked the suspension of the execution of the earlier imposed sentence of incarceration. At that time, he had the unfettered prerogative to make that reinstated sentence of incarceration either concurrent with or consecutive to the 50-year term imposed by Judge Miller. In the exercise of his discretion, he chose to make it consecutive. In this, there was no error. Any holdings to the contrary in *State v. White* and *Raines v. State* are hereby explicitly overruled. Any dicta to the contrary in *State v. White* and *Raines v. State* are hereby explicitly disavowed.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.