887 A.2d 623

**J. Michael STOUFFER, Warden**

v.

**James L. PEARSON.**

**No. 1, Sept. Term, 2005.**

Court of Appeals of Maryland.

Dec. 8, 2005.

38

Karl A. Pothier, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), for petitioner/cross-respondent.

Joseph B. Tetrault (Stephen Z. Meehan, Pauline K. White, Tamal A. Banton, Prisoner Rights Information System of Maryland, Inc., Chestertown, on brief), for respondent/cross-petitioner.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

GREENE, J.

Inmate, James L. Pearson, respondent, filed a petition for habeas corpus relief in the Circuit Court for Washington County.[1] After a hearing in the Circuit Court (Wright, J. presiding) the court found that Mr. Pearson was entitled to an immediate release and ordered him to be released from the custody of the Division of Corrections (DOC)[2] after recalculation of diminution of confinement credits and verification of the expiration dates of his terms of confinement.[3] The Court

---

1. In the consolidated habeas corpus case, Judge Wright also ordered inmate Jonathan C. Hamlette's release after a recalculation of credits. Mr. Hamlette's recalculation, however, resulted in a lengthier confinement. Mr. Hamlette's order was vacated and his petition voluntarily dismissed with prejudice.

2. The DOC is a division of the Maryland Department of Safety and Correctional Services. *See* Md.Code (1999 Repl.Vol.), §§ 1–101(g), 3–201 of the Correctional Services Article.

3. The case as captioned indicates that the petitioner is J. Michael Stouffer, Warden of the Maryland Correctional Training Center (MCTC). In a footnote in Mr. Pearson's Brief to the Court, he also stated that on July 1, 2005, he was transferred from MCTC to Metropolitan Transition Center (MTC) and requests that this Court, under Md. Rule 2-241, substitute as petitioner, Mr. Gary Hornbaker, Warden of

of Special Appeals, in an unreported opinion, affirmed the trial court's judgment that Mr. Pearson was entitled to an immediate release. In holding that Mr. Pearson's "consecutive" sentence for crimes he committed while on parole did not commence at the termination of his parole, the intermediate appellate court explained that if parole is not revoked prior to the imposition of a new consecutive sentence, parole cannot be considered a term of confinement. In other words, parole is not a sentence *in esse.*[4] The DOC sought *certiorari.* We granted the DOC's petition for writ of certiorari filed March 10, 2005. *Stouffer v. Pearson,* 386 Md. 180, 872 A.2d 46 (2005).

In our review of the recalculation of Mr. Pearson's release date, we must determine what the proper commencement date of a consecutive sentence would have been, prior to June 1, 1994, while an offender was on parole and parole had not yet been revoked. In our resolution of this question, we hold that for sentencing purposes parole is not synonymous with incarceration or a sentence being served. Further, we hold that Mr. Pearson's sentencing in 1979, for crimes committed while on parole, cannot run consecutively to his term of parole because his parole was not revoked until after he was sentenced. Therefore, we conclude that Mr. Pearson is entitled to an immediate release.

### Facts

On February 1, 1972, the Circuit Court for Baltimore City sentenced Mr. Pearson to twenty-years imprisonment, to commence on August 3, 1971, for robbery with a deadly weapon.[5] On June 1, 1977, the Maryland Parole Commission (MPC) paroled Mr. Pearson. On March 29, 1978, the MPC issued a

---

MTC. MTC (and MCTC, for that matter) is a division of DOC. The DOC, therefore, is the real party in interest. *See* Md. Rule 2–201.

**4.** *"In esse"* means "[i]n actual existence." Black's Law Dictionary 792 (8th ed.2004).

**5.** But for Mr. Pearson's parole violation, his twenty-year sentence would have terminated, at the latest, on August 3, 1991.

retake warrant for Mr. Pearson. Mr. Pearson was arrested and incarcerated in Baltimore City.

On February 27, 1979, Mr. Pearson was sentenced in the Circuit Court for Baltimore City (Ross, J.) to a twenty-year term of incarceration for second-degree murder, to run "consecutive with any sentence on violation of parole [sic]" and a ten-year term for use of a handgun during the commission of a felony, consecutive to the second-degree murder sentence. Mr. Pearson was also sentenced to three years imprisonment for unlawfully carrying a handgun, to be served concurrently. On April 10, 1979, the MPC revoked Mr. Pearson's parole, ordering him to serve the balance of the original 1972 sentence, less eight months (or 245 days) "street time" credit. The DOC's adjusted maximum expiration date on Mr. Pearson's original 1972 sentence was August 28, 1992; his 1979 sentence would commence on August 28, 1992, and expire on November 24, 2021.[6]

Mr. Pearson filed a writ of habeas corpus on July 15, 2004, requesting an immediate release from incarceration, alleging that "at common law, a sentence imposed consecutively to a

---

**6.** On September 30, 2004, Judge Wright's order that directed Mr. Pearson's release from the DOC, stated that if Mr. Pearson's new sentence ran consecutively to the original parole term, the mandatory supervision release date, as calculated by the DOC, would have been August 24, 2007, after consideration of diminution of confinement credits. Further, the order stated that if the original term and the new term ran concurrently, as Mr. Pearson theorizes, the maximum expiration date would be May 20, 1996, adjusted for various pre-trial, diminution of confinement and parole credits.

Mandatory supervision means "a conditional release from confinement that is granted to an inmate under § 7–501 of this title ... includes a conditional release granted before July 1, 1989 that was referred to as mandatory release." Md.Code (1999, 2005 Supp.), § 7–101(g)(1) of the Correctional Services Article. *See* Md.Code (1999, 2005 Supp.), § 7–501 of the Correctional Services Article; *Frost v. State*, 336 Md. 125, 647 A.2d 106 (1994).

The maximum expiration date is, "the date that the term of confinement expires." *Wilson v. Simms*, 157 Md.App. 82, 87, 849 A.2d 88, 91 (2004). *See also*, Md.Code (1999, 2005 Supp.), § 3–701(2) of the Correctional Services Article (stating that for multiple sentences, "the period from the first day of the sentence that begins first through the last day of the sentence that ends last ...").

parole violation term commences on the date of imposition if, at the time of sentencing, parole has not yet been revoked." Mr. Pearson's habeas corpus hearing was held in the Circuit Court for Washington County on September 23, 2004.[7] On September 30, 2004, Judge Wright ordered Mr. Pearson released from custody and found that,

at common law, a sentence imposed consecutively to a parole violation term commences on the date of imposition if, at the time of sentencing, parole has not yet been revoked. In so far as the Division of Correction has stipulated that the petitioner[ ] would be entitled to immediate release if that were the case, the petitioner[ ] [is] ordered to be released from the custody of the Division of Correction upon recalculation of the[ ] individual diminution of confinement credits and verification of the maximum expiration dates of the[ ] terms of confinement.

## Discussion

The DOC contends that Md.Code (1999, 2005 Supp.), § 9–202(c) of the Correctional Services Article, provides that the imposition of a parolee's consecutive sentence commences at the expiration of the parole period and not on the date of imposition.[8] The DOC further maintains that Mr. Pearson's

---

7. On October 12, 2004, the DOC's Motion to Stay Judge Wright's Order for Mr. Pearson's mandatory release was granted and "stayed pending resolution on appeal."

8. The Maryland legislature enacted Acts 1994, Ch. 295, (effective June 1, 1994) codified at Md.Code (1990, 1994 Cum. Supp), Art. 27 § 690C(c) provided:

 **§ 690C. Commencement of consecutive sentences in multiple jurisdictions.**
 (c) *Sentence consecutive to parole.*—A sentence imposed consecutive to a term for which the defendant is on parole shall commence:
 (1) Upon expiration of the original term if parole is revoked; or
 (2) On the date the consecutive sentence was imposed if parole is not revoked.
 In 1999, Art. 27 § 690C was repealed and recodified without substantive change as Md.Code § 9–202(c), Acts 1999, ch. 54, § 1, effective October 1, 1999.

thirty-year consecutive sentence imposed in 1979 commenced in 1992, after Mr. Pearson served parole on his original 1972 twenty-year sentence. According to the DOC, when Mr. Pearson's new consecutive sentence was imposed, and no revocation of parole occurred, the new sentence would commence when his parole term was completed.

Mr. Pearson contends, however, that the date on which the sentencing judge imposed the thirty-year sentence was the date the sentence began. Mr. Pearson asserts that the Court of Special Appeals was correct when it affirmed the trial court and concluded that Maryland common law "prohibits the imposition of a sentence that is consecutive to a term of confinement that is not yet in existence. . . ."

■ Furthermore, Mr. Pearson maintains that § 9–202(c) should be applied retroactively. Thus, his release would have been effective after he served his original term of confinement, and his new sentence would have commenced on the date it was imposed and not after the original term was completed. On the other hand, the DOC contends that § 9–202(c) may not be applied retroactively to sentences imposed prior to the

---

The statute was enacted to resolve two specific intermediate appellate court cases, *Gantt v. State*, 81 Md.App. 653, 569 A.2d 220 (1990) and *State v. Parker*, 93 Md.App. 597, 613 A.2d 1020 (1992). In both cases the court held that parole was analogous to serving a sentence while incarcerated because parole allowed the prison walls to extend beyond its borders for sentencing purposes. On May 11, 1994, this Court in *State v. Parker*, 334 Md. 576, 640 A.2d 1104 (1994), reversed the intermediate appellate court and held that parole was not a term of confinement when considering a new consecutive or concurrent sentence. The passage of the statute occurred before our decision in *Parker* and before the present case. Section 9–202(c)(1)–(2) states:
§ 9–202 Consecutive and concurrent sentences—multiple jurisdictions
(c) *Sentence consecutive to parole.*—A sentence imposed consecutive to a term of confinement for which the defendant is on parole shall begin:
(1) if, at the time of sentencing, parole is revoked, on expiration of the original term of confinement; or
(2) if parole is not revoked, on the date that the consecutive sentence was imposed.
Md.Code (1999 Repl.Vol., 2005 Supp.), § 9–202(c) of the Correctional Services Article.

statute's 1994 effective date. We agree on this point and conclude that if the Legislature intended for the statute to apply retroactively, the language of the statute would have clearly expressed that intent.

A review of the applicable statutory and common law in 1979 is required to determine the effect of the sentencing judge ordering Mr. Pearson's new sentence to run consecutively to his original parole term.

### Statutory Law [9]

In 1999, the Legislature recodified Article 27 § 690C as Maryland Code § 9–202 of the Correctional Services Article. Section 9–202(c) states that a sentence imposed for a crime committed by a parolee commences if parole was revoked before sentencing, after the original term expired, or on the date of sentencing, if parole was not revoked. The enactment of § 9–202 was the first time the issue of sentencing before revocation of parole was specifically addressed by the Legislature.[10]

Section 9–202(c) did not exist in 1979 when Mr. Pearson was sentenced. Md.Code (1957, 1968 Repl.Vol., 1970 Cum. Supp.), Art. 41 § 123, however, was in effect and provided that if a parolee was convicted of a crime committed while on parole and was sentenced to an additional term of imprisonment, the new sentence would run consecutively to the unexpired portion of the original sentence unless otherwise indicated by the sentencing judge. The statute provided: [11]

---

9. The parties both raise the issue of the applicability of § 9–202(c) to Mr. Pearson's situation. As discussed *infra*, we find that neither § 9–202(c) of the Correctional Services, nor its predecessor, Art. 27 § 690C(c), applies to the instant case because neither statute was in effect when Mr. Pearson was sentenced and, as we have determined, the statute may not be applied retroactively.

10. *See supra* note 8.

11. Section 123 has been revised several times. Md.Code (1957, 1968 Repl.Vol., 1970 Cum.Supp.), Art. 41 § 123 (" § 123"). In 1986, § 123 became Md.Code (1957, 1986 Repl.Vol.), Art. 41 § 4–608 (" § 4–608").

### § 123. Effect of violation of parole.

Whenever any paroled prisoner shall be convicted of any crime committed while on parole, and shall be sentenced as a penalty therefor, to an additional period of incarceration in any institution within this State, *such new sentence shall run consecutive to the time to be served on the original term,* unless expressly ordered to the contrary by the judge imposing such new sentence.

Md.Code (1978 Repl.Vol.), Art. 41 § 123 (emphasis added). Although § 123 created a presumption that a sentence imposed for a new crime ran consecutively to the unexpired term of parole, the statute did not expressly state that formal revocation of parole was a condition precedent to the statute's applicability.

 Our task and focus is to interpret § 123, keeping in mind that the chief goal of statutory interpretation is to "ascertain and effectuate the intention of the legislature." *Comptroller of Treasury v. Citicorp Int'l Commc'ns, Inc.,* 389 Md. 156, 884 A.2d 112 (2005) (slip op. at 7) (quoting *Rockwood Cas. Ins. Co. v. Uninsured Employers' Fund,* 385 Md. 99, 108, 867 A.2d 1026, 1031 (2005)). *See also Motor Vehicle Admin. v. Jones,* 380 Md. 164, 175–76, 844 A.2d 388, 394–95 (2004); *Kaczorowski v. Mayor and City Council of Baltimore,* 309 Md. 505, 513–16, 525 A.2d 628, 632–33 (1987). In determining the meaning of a statute, we consider the statute's structure, including the title, and how the statute relates to other laws.

---

In 1988 (1957, 1987 Repl.Vol., 1988 Cum.Supp.), Art. 41 § 4–517 (" § 4–517") replaced § 4–608. In 1999, § 4–517 was replaced by Md.Code (1999), § 7–403 of the Correctional Services Article. Although the section designations and locations have changed since 1969, the pertinent language of the statute remains essentially the same.

In 2004, however, § 7–403 of the Correctional Services Article repealed the requirement that a new sentence run consecutive to the original term if a parolee was convicted for a new crime committed while on parole. Md.Code (1999, 2005 Supp.), § 7–403 of the Correctional Services Article, *amended by* Chapter 316, Acts 2004, effective Oct. 1, 2004. Section 7–403(a)(1), as amended, added new language stating that "the court shall determine if the new sentence is to run concurrently or consecutively...."

*Witte v. Azarian,* 369 Md. 518, 525–26, 801 A.2d 160, 165 (2002). We look first to the plain meaning of the language chosen by the Legislature. If the plain language of the statute is ambiguous, we analyze the case law, legislative history, and statutory function. *Comptroller v. Phillips,* 384 Md. 583, 591, 865 A.2d 590, 594 (2005) (*citing Deville v. State,* 383 Md. 217, 223, 858 A.2d 484, 487 (2004)).

In our examination of § 123 and its predecessors, we must determine whether the Legislature intended for the statute to apply in situations where parole had not yet been revoked when a sentencing judge imposed a new sentence for a crime committed while on parole. Several earlier cases which discuss the applicability and meaning of Art. 41, § 101, the predecessor to § 123, highlight the ambiguity created by the statutory language. The operative language of § 101 was similar to § 123, in that "the time to be served on the original term shall run consecutive to such new sentence, and be served in confinement prior to the beginning of such new sentence, unless expressly ordered to the contrary by the judge imposing such new sentence." [12] *See Burkett v. War-*

---

12. Section 123 went into effect January 1, 1969, and replaced Md.Code (1957, 1968 Repl.Vol., 1970 Cum.Supp.), Art. 41 § 125 ((1968 Md. Laws, Ch. 457) (effective Jan. 1, 1969)) (" § 125"). Section 123 was equivalent to § 125. We find that the statutory meaning and the manner in which the statute was applied by this Court was essentially the same. Section 125 required that, "the original term shall run consecutive to such new sentence ... unless expressly ordered to the contrary by the judge imposing such new sentence, and be served in confinement prior to the beginning of such new sentence, unless expressly ordered to the contrary by the [sentencing] judge...." Md.Code (1957, 1965 Repl.Vol.), Art. 41, § 125.

Section 125 replaced § 101. Section 101 was revised in 1953, and provided, in pertinent part, that:
Whenever any paroled prisoner shall be convicted of any crime committed while on parole, and shall be sentenced ... to an additional period of incarceration in any institution within this State, the time to be served on the original term shall run consecutive to such new sentence, and be served in confinement prior to the beginning of such new sentence, unless expressly ordered to the contrary by the judge imposing such new sentence.

*den*, 214 Md. 603, 605, 134 A.2d 77, 78 (1957) (interpreting the sentencing judge's pronouncement that "[§ 101] should not apply" and that the sentence imposed for the new offense committed while on parole "ran concurrently with the sentence that [Mr. Burkett] was then serving [for violation of parole]"); *State ex rel. Justice v. Warden*, 203 Md. 651, 652, 97 A.2d 906 (1953) (holding that the paroled prisoner's sentence ran consecutively pursuant to § 101 because the sentencing judge "did not specify whether the sentence of five years was to run consecutively or concurrently with the unserved portion of the sentence of eighteen years").[13] *But see State v. Ewell*, 234 Md. 56, 58, 198 A.2d 275, 276 (1964) (noting that the new sentencing "order did not specify when th[e] sentence should begin, and the prison authorities correctly calculated that it should begin at the end of the original five year term" even though parole had not been revoked at the time of imposition of the new sentence).

In the context of imposing a sentence for a crime committed while on parole, in no case has this Court held that § 123 was intended to apply if parole had not been revoked. If the sentencing judge failed to elaborate concerning the commencement date, under § 123, the new sentence was construed to run consecutively. On one hand, if the sentencing judge specified that the sentence began on the date of imposition, under § 123, the new sentence was construed to run concurrently. On the other hand, if the sentencing judge specified that the new sentence was consecutive to a violation of parole, as in the present case, the sentence was construed to commence after expiration of the term of parole.

█ In summary, § 123 and its predecessors failed to indicate whether the statutes were intended to be applied prior to

---

Md.Code (1951, Cum.Supp.1957), Art. 41 § 101(1953 Md. Laws, Ch. 625). In 1957, § 101 was recodified as Md.Code (1957), Art. 41 § 125 with no substantive change.

13. The *Justice* opinion did not reveal whether Mr. Justice's parole had been revoked prior to imposition of the new sentence. This Court held that the paroled prisoner's sentence ran consecutively in accordance with § 101.

or after parole revocation when a sentencing judge imposed a new or subsequent sentence. The ambiguity within the statute and its application led to varying results. In 1990, it appears that the Legislature sought to correct the problems created by this omission when it enacted Art. 27, § 690(c). Mr. Pearson, however, was sentenced in 1979 and, therefore, could not have been aided by the new statute.

■■ Moreover, a parolee is not in violation of parole until after a hearing and a determination has been made that the parolee has violated the terms of parole. Due process requires that a parolee be given notice and a hearing before parole can be revoked.[14] *See Sec'y, Dept. of Pub. Safety and Corr. Servs. v. Henderson,* 351 Md. 438, 448–49, 718 A.2d 1150, 1156 (1998); *Swan v. State,* 200 Md. 420, 425, 90 A.2d 690, 692 (1952). Thus, in order for a parolee's new sentence to run consecutively to the time to be served on the original term, parole must have been revoked. Therefore, arguably, if parole had not yet been revoked when a new sentence was imposed, the presumption contained in § 123 would not have been applicable because the statute omitted necessary qualifying language. Similarly, in situations where an individual was merely charged with violation of parole or served with a parole

---

**14.** Further, in *Bergstein v. State,* 322 Md. 506, 519–20, 588 A.2d 779, 785–86 (1991), we held:

> Procedural due process, perhaps in a somewhat truncated form, is obligatory before an individual's parole or probation may be revoked. *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). "Once a State has granted prisoners a liberty interest, ... due process protections are necessary 'to insure that the state-created right is not arbitrarily abrogated.' " *Vitek v. Jones,* 445 U.S. 480, 488–89, 100 S.Ct. 1254, 1261, 63 L.Ed.2d 552, 562 (1980)(quoting *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935, 951 (1974)). In *Morrissey,* the Supreme Court stated that the "full panoply of rights due a defendant in [a criminal prosecution] does not apply to parole revocations." *Morrissey,* 408 U.S. at 480, 92 S.Ct. at 2600, 33 L.Ed.2d at 494. The Court explained, "[r]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions." *Id.*

retake warrant, the presumption would not have been applicable because of the same omission.

## Common Law

We have stated that, generally, the imposition and commencement date of a sentence are matters within the discretion of the sentencing judge, subject to constitutional and statutory limits. *Kaylor v. State,* 285 Md. 66, 68, 400 A.2d 419, 421 (1979). In *Kaylor,* the issue presented was whether a suspended sentence could be served consecutive to a new sentence for an offense committed while on probation.[15] The State argued "that a judge has the power to designate the time at which a sentence will commence and has the discretion to run a sentence consecutively to another sentence." *Id.* at 68, 400 A.2d at 421. This Court stated that the "imposition of sentence in a criminal case is a matter within the discretion of the judge" and "a judge's power to direct when a sentence is to be served ... [or] when a sentence shall commence ... merely implements that punishment." *Id.* at 69–70, 400 A.2d at 421–22.

In discussing the judicial power and discretion to impose consecutive sentences we said:

> The authority of the court to sentence a convicted defendant derives from the court's power to try an accused person for a crime committed within its jurisdiction.
>
> \* \* \* \* \* \*
>
> This judicial power includes the determination of whether a sentence will be consecutive or concurrent. . . .
>
> \* \* \* \* \* \*
>
> [T]he power of a judge to impose consecutive sentences ensures that a person who commits separate and distinct violations of the law receives separate and distinct punish-

---

**15.** *See infra* note 19.

ments. Otherwise a person would escape the full impact of punishment for one offense.

*Id.* at 69–70, 400 A.2d at 421–422 (citations omitted).

Several jurisdictions have directly addressed the issue of the commencement date of a new sentence for a crime committed by a parolee, when parole had not yet been revoked. The United States Supreme Court has held that when a parolee is sentenced for a crime committed while on parole, and parole was not revoked prior to the new sentence, the parolee should serve the remainder of the original sentence after revocation of parole. *Moody v. Daggett,* 429 U.S. 78, 85, 97 S.Ct. 274, 278, 50 L.Ed.2d 236, 243 (1976) (noting that the original term "of a parolee convicted of [a] crime is to run consecutively to the sentence imposed for the subsequent offense"). *See also Stockton v. Massey,* 34 F.2d 96, 97 (4th Cir.1929) (stating that once the intervening sentence was completed, the parole viola-tor would be returned to prison to "complete his original sentence" and the parole board had the "arbitrary power . . . to delay the hearing and revocation of parole"); *Santa v. Tippy,* 14 F.3d 157, 159 (2nd Cir.1994) (stating that when a parolee committed a crime while on parole, and parole was not revoked until after imposition and commencement of the new sentence, once parole was revoked the unexpired portion of the original sentence would begin to run concurrently).

In *State v. Parker,* 334 Md. 576, 640 A.2d 1104 (1994), we indirectly addressed the commencement date for sentences involving parolees for crimes committed while on parole when we reviewed and overruled *Gantt v. State,* 81 Md.App. 653, 569 A.2d 220 (1990). In Maryland, the confusion in the law had its genesis with the intermediate appellate court's analysis in *Gantt.* Notwithstanding our decision in *Parker,* the DOC maintains, *sub judice,* that the holding in *Gantt* remains intact today as a valid statement of the law in accordance with the rule of *stare decisis. See Livesay v. Baltimore County,* 384 Md. 1, 14, 862 A.2d 33, 41–42 (2004) (noting that *stare decisis* means "to stand by the thing decided") (internal citation omitted).

In the *Gantt* case, Mr. Gantt was convicted by a jury in the Circuit Court for Baltimore City for possession with intent to distribute a controlled dangerous substance while on parole from a federal sentence. *Gantt,* 81 Md.App. at 655, 569 A.2d at 221. The court imposed a fifteen-year consecutive sentence to follow his federal sentence. *Id.* Eventually, Mr. Gantt was paroled from the federal sentence. *Id.* His federal parole was not revoked before the Baltimore City sentencing judge imposed the new consecutive sentence. *Id.*

The issue presented in *Gantt* was whether parole was considered a sentence *in esse.* The intermediate appellate court subsequently held:

> [A] person who is on parole is actually serving a sentence outside the prison walls. Thus, a judge sentencing a parolee on a subsequent offense may make that subsequent sentence consecutive to the sentence the parolee is serving, i.e., the sentence from which he is on parole.

*Id.* at 660–61, 569 A.2d at 223. Unless parole was revoked, *Gantt* permitted parolees to serve the rest of their parole on the "outside," stating that,[16]

> [s]entencing judges should be cognizant of the possibility that if the parole authorities (especially in foreign jurisdictions) do not revoke his parole—or until they do—such a defendant given a consecutive sentence to be served upon the termination of an earlier sentence may well remain free from physical restraint until the conclusion of that prior sentence or until a retake warrant is issued by the Department of Parole and Probation.

*Id.* at 661, 569 A.2d at 224.

The import of *Gantt* is that when a parolee's parole term is completed, conceivably years later, a parolee would need to contact authorities. The parolee would then be incarcerated

---

**16.** Further, *Gantt* held that when a court sentences a parolee for a new offense, that sentence is presumed to be consecutive unless otherwise directed by the sentencing judge. *Gantt,* 81 Md.App. at 660–61, 569 A.2d at 223–24.

and, at that point, begin to serve the balance of the sentence imposed at the time of the parole violation.[17]

In *State v. Parker*, 334 Md. 576, 591, 640 A.2d 1104, 1111 (1994), we disapproved *Gantt*, "to the extent that [it] treats time spent on parole and time spent in prison identically in the context of multiple sentences." We agreed in *Parker* that "*Gantt* was correct in its statement that parole constitutes service of the sentence beyond the prison walls. . . ." *Id.* at 587, 640 A.2d at 1109.

On November 10, 1983, in Baltimore County, as part of a plea agreement, Mr. Parker pled guilty to second-degree murder, but was not sentenced on the murder conviction until 1984. *Id.* at 581, 640 A.2d at 1106. On December 1, 1983, he pled guilty in Federal court to robbery and was sentenced to

---

**17.** In *Parker*, we disavowed the reasoning in *Gantt* as illogical, using the following as an illustration of a prisoner who is given a life sentence in one jurisdiction (Jurisdiction A) and 20 year-sentence for armed robbery in another jurisdiction (Jurisdiction B):

> We will suppose that the prisoner serves 25 years in prison and is granted parole on the life sentence in Jurisdiction A. The literal language of *Gantt* would prohibit the robbery sentence in Jurisdiction B from beginning until the termination of the life sentence in Jurisdiction A, since the prisoner is effectively serving his term of life imprisonment in Jurisdiction A "on the outside." Only when that term is complete (i.e., when he dies) would Jurisdiction B be able assert its jurisdiction over the prisoner. Thus, the language in *Gantt* effectively deprives Jurisdiction B of its ability to punish one who has broken its law.
>
> We will assume further that this same prisoner, while on parole from his life sentence in Jurisdiction A, commits an additional crime in Jurisdiction C for which the punishment is ten years imprisonment. Such a crime may well constitute a parole violation in Jurisdiction A, and we may expect the parole authorities in Jurisdiction A to revoke the prisoner's parole, but they cannot be compelled to do so. If the parole authorities do not act, the prisoner continues to serve his life sentence from Jurisdiction A "on the outside," and regardless of whether the sentencing judge from Jurisdiction C deems his sentence concurrent or consecutive to the previous sentences, the prisoner is effectively beyond the reach of the correctional authorities in Jurisdiction C. Like Jurisdiction B, Jurisdiction C is deprived of its ability to punish one who has broken its law. This result violates the principle of dual sovereignty, a fundamental element of the structure of our government.

334 Md. at 589, 640 A.2d at 1110.

twenty years in the Federal correctional system. *Id.* at 581 n. 1, 640 A.2d at 1106 n. 1. As part of the plea agreement, the Circuit Court for Baltimore County sentenced him for the second-degree murder conviction to a term of twenty years to run concurrently with his federal sentence. *Id.* at 582, 640 A.2d at 1107.

On April 1, 1991, Mr. Parker was paroled on his federal sentence and remanded to the custody of the Maryland Division of Corrections to complete the balance of his Maryland sentence. *Id.* Mr. Parker filed for post-conviction relief, objecting to serving the Maryland sentence behind prison walls. *Id.* At Mr. Parker's post-conviction hearing, he argued that the Maryland sentencing judge "intended that when Parker was paroled upon his federal sentence he would thereby be paroled from his Maryland sentence." *Id.* at 583, 640 A.2d at 1107. The post-conviction judge granted Mr. Parker's petition and released him from State custody. *Id.* The State appealed. *Id.* The intermediate appellate court, on the basis of *Gantt,* agreed with the post-conviction court and concluded that, "because [Parker's] term of parole from his federal sentence is twenty years and his Maryland sentence was to run concurrently to his federal term, serving the balance of his twenty years on parole will satisfy his Maryland sentence." *Id.* at 584, 640 A.2d at 1107 (alteration in original). The State then sought review in this Court. *Id.* We granted the State's petition and reversed the judgment of the Court of Special Appeals. *Id.* at 584, 640 A.2d at 1108.

In *Parker,* we held that although a parolee is considered to be "in custody," "parole is fundamentally different in nature from actual service within the prison walls." *Id.* at 587, 640 A.2d at 1109. A parolee has freedom that a confined prisoner lacks, such as the ability

> to return to society and function as a responsible, self-reliant person . . . [to] be gainfully employed[,] . . . be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects him to many restrictions not applicable to other citizens, his

condition is very different from that of confinement in a prison.

*Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482, 92 S.Ct. 2593, 2600–01, 33 L.Ed.2d 484, 495 (1972)).[18]

In our view, in *Parker*, this Court effectively overruled *Gantt's* holding that a sentencing judge could run a sentence consecutively to a term of parole. In reaching that result, in effect, we determined that a prisoner on parole is not serving a sentence *in esse* because our holding in *Parker* was that

---

**18.** The DOC argues that Mr. Pearson's case and the *Parker* case differ because Mr. Pearson involved a single jurisdiction while *Parker* was a "dual sovereignty" case or involved multiple jurisdictions. *Id.* at 591, 640 A.2d at 1111.

We agree with Parker to the extent that it disapproved *Gantt* but disagree as to the precedential value of *Parker*. Moreover, the distinction raised by the State, in its argument in this Court, is immaterial for purposes of sentencing. If an individual is sentenced in two jurisdictions, "both sentences remain independent, and . . . must be satisfied independently. The Maryland sentence . . . may be satisfied either by imprisonment in federal custody or in Maryland, or by parole by Maryland authorities." *Id.* at 596, 640 A.2d at 1114. This Court in *Parker* disavowed the sentencing judge's sentencing authority and held, "that the sentencing judge had no authority to designate the institution in which Parker would serve his sentence, particularly when the desired institution falls under the jurisdiction of the federal government, an independent, co-equal sovereign." *Id.* at 592, 640 A.2d at 1112.

A sovereign, whether state or federal, retains independent authority to decide whether a parolee who committed a crime in its jurisdiction is released on parole or incarcerated. *Id.* at 594, 640 A.2d at 1113. A sentencing judge, therefore, should focus on the status quo or conditions existing at the time of sentencing, recognizing that parole is different from incarceration, regardless of whether single or multiple jurisdictions are at issue and make a determination on how to relate the subsequent sentence to the affairs at hand.

Similarly, in the case *sub judice*, the focus should be on the authority of the sentencing judge and not whether the sentences are limited to one jurisdiction or multiple jurisdictions. In this case, only one jurisdiction was involved, Mr. Pearson was paroled from an earlier Maryland sentence when the sentencing judge considered the status quo in imposing Mr. Pearson's sentence. If Mr. Pearson's parole had been revoked before he was sentenced, the original term would become a term of confinement; hence the new sentence could have been imposed consecutive to his original term. The result in this case, however, was that at the time of sentencing, Mr. Pearson was not serving a term of confinement because he was still on parole, thus the sentencing judge had no term of confinement to which he could relate the new sentence.

"parole is fundamentally different in nature from actual service within the prison walls." *Id.* Furthermore, we held that the consecutive sentence imposed in *Gantt*, "frustrate[d] the punitive purposes of the criminal justice system." *Id.* at 588, 640 A.2d at 1110. Part of the rationale for that holding was that parole is not a term of confinement to which a subsequent consecutive sentence could possibly relate. *See DiPietrantonio v. State*, 61 Md.App. 528, 487 A.2d 676 (1985). Accordingly, we reaffirm that *Gantt* was not a correct statement of Maryland law. *Gantt* misconstrued the common law regarding the commencement date of a new sentence as it relates to a parolee.

The implications of *Gantt* and *Parker* were addressed later in *Geddings v. Filbert*, 144 Md.App. 95, 106–07, 796 A.2d 834, 842 (2002). *Geddings* involved a single jurisdiction. Mr. Geddings was sentenced, incarcerated, and placed on parole in Maryland. *Id.* at 96–98, 796 A.2d at 835–37. Subsequently, Mr. Geddings was convicted of committing a Maryland crime and a new sentence was imposed. *Id.* Mr. Geddings, petitioned the court "for writ of habeas corpus, alleging that he was entitled to immediate release due to his accumulation of diminution of confinement credits" for multiple sentence terms. *Id.* at 95, 796 A.2d at 834. Mr. Geddings argued that under *Gantt*, his time on parole should be calculated as time spent in confinement and, as such, "there was no break in the term of his confinement." *Id.* at 106, 796 A.2d at 842. In *Geddings*, the intermediate appellate court disavowed *Gantt* and drew upon our reasoning in *Parker*. *Id.* at 106–07, 796 A.2d at 842. The court noted that the foundational distinction was clear between imprisonment and parole, and concluded:

Although a sentence continues to be served whether within prison walls or without, it is clear that parole is different in nature from, and serves a purpose different from that of, incarceration.

*Id.* at 107, 796 A.2d at 842 (quoting *Parker*, 334 Md. at 588, 640 A.2d at 1110).

 Incarceration and parole play divergent roles and should be considered differently at the time of sentencing. An incarcerated prisoner is owed and given credit for each day of detention. *See Parker,* 334 Md. at 588, 640 A.2d at 1109. A parolee, if parole is revoked, may be denied credit for time spent on the "outside," i.e., "street time." Parole is unique in nature and should not be treated analogously, "in the context of multiple sentences, [to do so] is overly simplistic." *Id.* at 588–89, 640 A.2d at 1110; *Geddings,* 144 Md.App. at 107, 796 A.2d at 842.

 The Court of Special Appeals in *DiPietrantonio* expounded on the difference between probation and a term of confinement. The court stated that probation constituted a suspension of sentence and not a term of confinement [19] and concluded that,

---

**19.** Probation and parole are distinguishable. Probation is "a court-imposed criminal sentence that, subject to stated conditions, releases a convicted person into the community instead of sending the criminal to jail or prison." Black's Law Dictionary 1240 (8th ed.2004). Probation is not an entitlement, it is a matter of grace. *Kaylor,* 285 Md. at 75, 400 A.2d at 424.

Parole, however, is "[t]he release of a prisoner from imprisonment before the full sentence has been served." Black's Law Dictionary 1149 (8th ed.2004); *Morrissey v. Brewer,* 408 U.S. at 477, 92 S.Ct. 2593, 2598, 33 L.Ed.2d 484, 492 stating, "[t]he essence of parole is the release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence."

The MPC is purely an executive agency that has the exclusive power to authorize, administer and revoke parole. See Md.Code (Md.Code 1999 Repl.Vol., 2005 Supp.), § 7–205 of the Correctional Services Article. Probation differs in that a court administers, monitors, and revokes probation.

Although we recognize the differences between probation and parole, we believe that the two terms are analogous for the limited purpose of imposition of a consecutive or concurrent sentence upon revocation. The U.S. Supreme Court held that "[d]espite the undoubted minor differences between probation and parole, the commentators have agreed that revocation of probation where the sentence has been imposed previously is constitutionally indistinguishable from the revocation of parole." *Gagnon,* 411 U.S. 778, 782, n. 3, 93 S.Ct. 1756, 1759, 36 L.Ed.2d 656, 661–62 (1973).

no incarceration was actually being served or was unequivo-
cally scheduled to be served ... when [the presiding judge]
sentenced [DiPietrantonio] to 50 years, that sentence ...
was not, and could not have been, concurrent with or
consecutive to anything. As of that moment, there was no
other sentence of incarceration *in esse*. The earlier sus-
pended execution of sentence—a sentence the execution of
which was merely *in posse*—simply did not count as a then
concrete reality to which [the presiding judge] could have
related his sentencing.... If he had attempted to make
th[e] ... sentenc[e] either concurrent or consecutive to the
earlier sentence, the execution of which was in suspension, it
would have been empty verbiage, signifying absolutely noth-
ing.

61 Md.App. at 534–35, 487 A.2d at 679. Judge Moylan,
writing for a panel of the court, continued that a sentencing
judge

may make his sentence concurrent with or consecutive to
whatever other sentence then exists, [ ] actually being
served [ ]. He may not, however, presume to bind the
future. To do so would be, *ipso facto*, to usurp the sentenc-
ing prerogative of some other judge operating in a near or
distant time yet to be.

*Id.* at 532, 487 A.2d at 678.

We find Judge Moylan's analysis in *DiPietranto-
nio* persuasive. A sentencing judge, at the time of sentencing,
should determine what other unsuspended sentences of con-
finement or actual sentences of confinement exist, in order to
relate the current sentence to any previous sentence. *See id.*
at 533, 487 A.2d at 679. Further, because "[t]he sentencing
sequence is controlling[,][a] judge must relate the sentence he
imposes to the *status quo* at the moment of sentencing. He
may deal with the present or the past as concrete reality." *Id.*
at 532, 487 A.2d at 678 (quoting *White*, 41 Md.App. 514, 515,
397 A.2d 299, 300–01).

When a parolee is sentenced for a new crime
before revocation of parole, a sentencing judge may not treat

parole as an existing term of confinement and, as such, a new sentence may not be served consecutive to a parole term because a "sentence may not be consecutive . . . with a term of confinement which is not then *in esse.*" *Id.* at 533, 487 A.2d at 679; *Robinson v. Lee*, 317 Md. 371, 372, 564 A.2d 395 (1989) (stating that "[s]ubsequent sentences imposed upon defendant to be served 'consecutive with any sentence now serving' only ran consecutive to sentence defendant was actually serving rather than consecutively to aggregate of all preexisting unserved sentences"); *Stanton v. State*, 45 Md.App. 662, 663, 415 A.2d 305, 306 (1980) (noting that "the imposition of a sentence to be consecutive to . . . [a] non-existent . . . sentence would be illegal, or, more accurately, an 'empty gesture' "). Thus, when imposing a consecutive sentence for a new offense, a sentencing judge should not consider parole as an existing sentence being served. When a new sentence is imposed before parole is revoked, the new sentence commences on the date of imposition.

## Conclusion

 In the present case we point to the statutory and the common law practice prior to the misinterpretation of the common law in *Gantt.* The sentencing judge erred when he imposed a sentence to commence in the future. We hold that Mr. Pearson's thirty-year sentence commenced on February 27, 1979, the date his sentence was imposed. Parole is not a sentence *in esse*, nor is it analogous to incarceration for sentencing purposes. If a parolee commits an offense and the sentencing judge imposes a new sentence before revocation of parole, the new sentence commences on the date of imposition.[20]

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED, WITH COSTS.**

---

**20.** This holding applies only to sentences imposed before the enactment of § 9–202 of the Corr. Serv. Article. In all other respects, Section 9-202 would be controlling.