*Luke Daniel Johnson v. State of Maryland*, No. 1134, Sept. Term 2019.  Opinion by
Arthur, J.

**DUE PROCESS—PROBATION REVOCATION—JUSTICE REINVESTMENT
ACT**

With the primary goal of reducing Maryland's prison population, the General Assembly
enacted the Justice Reinvestment Act.  2016 Md. Laws, ch. 515.  Among the Act's
comprehensive reforms were significant amendments to the statute governing probation
revocations, Maryland Code (2001, 2018 Repl. Vol.), § 6-223 of the Criminal Procedure
Article.  These amendments introduced the concept of a "technical" violation of probation
and placed presumptive limits on the duration of incarceration that may be imposed for
such a violation.  A court may impose a period of incarceration that exceeds those
contained in the statute's presumptive limits only if the court expressly finds and states on
the record that adhering to that sentence would create a risk to public safety, a victim, or a
witness.

The statutory presumption is not an evidentiary presumption that a party must submit
evidence to rebut, but rather is a limitation on the court's discretion.

A probationer must make a timely objection if a court does not expressly find and state on
the record that adhering to the presumptive limits on incarceration will pose a threat to
public safety, a victim, or a witness they need to object at the time.  Absent a timely
objection, the issue is not preserved for appellate review.

Before the court determines whether it may depart from the presumptive limits on
incarceration because a probationer poses a risk to public safety, a victim, or a witness, the
probationer has a due process right to confront and cross-examine the witnesses whose
testimony forms a basis for the court's findings.

Circuit Court for Washington County
Case No. 21-K-006054

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1134

September Term, 2019

_____

LUKE DANIEL JOHNSON

v.

STATE OF MARYLAND

_____

Nazarian,
Arthur,
Sharer, J. Frederick
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Arthur, J.

_____

Filed:  July 29, 2020


*Judge Donald E. Beachley did not participate in the Court's decision to designate this opinion for publication pursuant to Maryland Rule 8-605.1.

Pursuant to Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

In 1980, Luke Daniel Johnson was convicted of first-degree rape in the Circuit Court for Washington County. The court sentenced him to life in prison.

In 2015, the court granted post-conviction relief, vacating Johnson's conviction. A year later, the court accepted Johnson's guilty plea and sentenced Johnson to life in prison, but suspended all but the 36 years that he had already served. He was released, subject to five years of supervised probation.

Johnson was later reincarcerated and charged with violating two conditions of his probation. He acknowledged that he committed two technical violations for which the presumptive maximum sentence is 15 days of incarceration. Over Johnson's objection, the court received unsworn testimony from a witness who was not subject to cross-examination. Based on that testimony, the court concluded that Johnson had committed a "public safety violation." The court revoked Johnson's probation and sentenced him to life in prison, with all but 10 years suspended, followed by three years of supervised probation.

This Court granted Johnson's application for leave to appeal. We shall vacate the judgment and remand the case to the Circuit Court for Washington County for proceedings consistent with this opinion.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

On October 20, 1980, Luke Daniel Johnson was tried in the Circuit Court for Washington County on charges of first-degree rape, second-degree rape, committing a

---

[1] Portions of this section are taken directly from *Conaway v. State*, 464 Md. 505 (2019).

third-degree sexual offense, and assault. The charges arose from events that occurred when Johnson was 19 and the victim was 17.

After a one-day jury trial, Johnson was convicted of first-degree rape and of committing a third-degree sexual offense. The trial judge sentenced Johnson to life in prison on the rape conviction. On appeal, this Court affirmed the rape conviction, but reversed the third-degree sexual offense conviction.

In 2015, the circuit court granted post-conviction relief to Johnson under *Unger v. State*, 427 Md. 383 (2012), and vacated his conviction. In May 2016, Johnson entered an *Alford* plea to first-degree rape.[2] The judge sentenced him to life in prison, suspending all but 36 years, one month, and four days, and giving him credit for 13,183 days of time served. The court also imposed five years of supervised probation.

Johnson's probation included two standard conditions: report as directed and follow his supervising agent's lawful instructions; and get permission from his supervising agent before changing his address, changing his job, or leaving the state. There were, additionally, three special conditions: (1) he had to submit to evaluation and attend and successfully complete mental health treatment; (2) he could have no direct or indirect conduct with the rape victim; and (3) he was not to enter or be found near any Sheetz store in Washington County. The conditions of Johnson's probation were later modified to require that he participate in a sex offender tracking and monitoring

---

[2] An *Alford* plea is "a guilty plea containing a protestation of innocence." *Bishop v. State*, 417 Md. 1, 19 (2010) (quotation marks omitted). For most purposes, an *Alford* plea is the "functional equivalent of a guilty plea." *Id.* at 20.

program,[3] submit to alcohol and drug treatment, and abstain from alcohol, illegal substances, and the abusive use of any prescription drug.

In April 2017, Johnson's supervising agent reported that Johnson had traveled to West Virginia on three separate occasions without her permission. Because the purpose of these trips was assertedly to drive a co-worker home, the agent recommended that no action be taken at that time.

Approximately two months later, Johnson's supervising agent requested a warrant for Johnson's arrest because of alleged violations of probation. The agent again cited the three instances when Johnson drove to West Virginia. In addition, she claimed that he had taken a job at a carnival without her permission and had gone to Ocean City without her permission.

The circuit court granted the agent's request and issued a warrant. Johnson was arrested on August 22, 2017. He has remained incarcerated ever since.

On March 12, 2018, the circuit court held a hearing on the alleged probation violations. By that time, Johnson had been re-incarcerated for more than six months.

At the hearing, Johnson admitted to obtaining employment at the carnival from July 21 to July 23, 2017, without his supervising agent's permission, and traveling to West Virginia three times without permission. He denied traveling to Ocean City without

---

[3] Specifically, Johnson was required to participate in the state-wide COMET program. "COMET" is an acronym for Collaborative Offender Management Enforcement Treatment. *See Russell v. State*, 221 Md. App. 518, 521 n.3, 523-24 (2015).

the agent's permission.  The judge found that Johnson had violated the conditions of his probation, but did not announce that he had decided to revoke the probation.

The judge voiced his concern, however, that Johnson was not a "very good candidate for probation, as far as lighting around to West Virginia and places he's not supposed to, to be."  The judge mentioned allegations that Johnson had propositioned a young woman, 17 years of age, who worked at the carnival with him.  Defense counsel responded by stressing that Johnson is not a registered sex offender[4] and noted that the prosecutor would likely "agree there is actually nothing illegal about him talking to somebody over the age of sixteen."

The State informed the court that "the seventeen year old from the carnival [was] present" and asked the court to "give her an opportunity to speak[.]"  The State said that the witness was "willing to address the [c]ourt" and "even indicated that if necessary, she would get on the stand and get under oath if [the court] wished to question her under oath."  Over defense counsel's objection, the judge allowed the young woman to address the court, without being sworn or subject to cross-examination.  She elaborated on Johnson's interactions with her, stating:

> I was working for the carnival when I met [Johnson].  During working for the carnival, the — for [Johnson]'s birthday, he was talking about going to Ocean City for three days.  He said he wanted to take me with him without my parents knowing.  He wanted to take me and my mom

---

[4] The Maryland General Assembly first enacted the Maryland sex offender registration statute in 1995.  *Doe v. Dep't of Pub. Safety & Corr. Servs.*, 430 Md. 535, 545 (2013).  Retroactive application of the statute to sex offenders who committed their crimes before the statute went into effect on October 1, 1995, has been deemed unconstitutional.  *Id.*  at 553.

4

to his car, but me first, and do something to me in the back seat, unknowingly, which I didn't want to do, so I didn't go.

He would come up and talk to me and my mom every single day while working at the carnival. He would call me names like – you look beautiful, you look cute. I would say thank you to the beautiful part, but looking cute made me feel uncomfortable. But he would kind of flirt with my mom, which would flatter us, but, so.

Under the Justice Reinvestment Act (2016 Md. Laws, ch. 515), Johnson's violations of probation were "technical" in nature. The Act presumes that the maximum sentence of incarceration is 15 days for a first technical violation, 30 days for a second technical violation, and 45 days for a third technical violation. Md. Code (2001, 2018 Repl. Vol.), § 6-223(d)(2) of the Criminal Procedure Article. That presumption could be rebutted, however, if the court found that adhering to that limit "would create a risk to public safety, a victim, or a witness." *Id.* § 6-223(e)(2).

The State urged the court to find that Johnson was a danger to public safety and requested that Johnson be returned to prison for 10 years, "so that by the time when he gets out, maybe he would realize that he cannot prey on young women and children in our society." The State acknowledged that "there was nothing inherently illegal" in Johnson's interactions with the 17-year-old co-worker,[5] but argued that his conduct showed that he had "not gotten over his predilections that landed him in jail in the first place."

_____

[5] *See generally* Md. Code (2002, 2012 Repl. Vol.), § 3-307(a)(4)-(5) of the Criminal Law Article (prohibiting a person over the age of 21 years from engaging in a sexual act or vaginal intercourse with another if the victim is 14 or 15 years old); *id.* § 3-324 (prohibiting a person from soliciting a minor to engage in certain unlawful sexual activities).

Defense counsel, attempting to mitigate Johnson's probation violations, stressed that the trips to West Virginia involved giving someone a ride home from work and that initially he was only reprimanded for these "good deed[s]." Defense counsel also explained that Johnson went to work for three days at the carnival because he was unexpectedly laid off from his construction job and "simply was seeking employment in order to get money to pay his bills." Finally, counsel noted that, in addition to the 36 years that Johnson served for his rape, he had already served seven months for his probation violations.

The circuit court judge sided with the State:

> You were ultimately released after serving a whole lot of time – thirty-six years in prison – and you'd think Mr. Johnson, that you'd have – if not a probation requirement – the good sense to avoid hitting on teenage kids after what you went to prison for all those years.
>
> And I do find it's a public safety violation. The violation of going to West Virginia are [sic] technical. Working without permission – technical. I certainly do believe [the supervising agent] would not have permitted you to work at a carnival where lots of children come with, with your history in this case.
>
> But the, the conditions of probation, while they were only, you know, you live where you're supposed to, don't travel without permission, and didn't include no contact with seventeen year old ladies, it still troubles me after all of this time that this was something that you engaged in.
>
> And therefore the sentence is going to be life in the Division of Correction, suspend all but a, but an additional ten years – that's a suggestion of [the State], which I think is reasonable. I think you deserve

to have an opportunity to see the light of day again, and hopefully not repeat this type of behavior.[6]

The court did not expressly find and state on the record that adhering to the presumptive limit of 15 days would create a risk to public safety.

Johnson noted an appeal to this Court on March 19, 2018, and filed an application for leave to appeal less than a month later. This Court dismissed the first appeal on the State's motion. The Court of Appeals granted Johnson's petition for writ of certiorari and ultimately affirmed this Court's decision in a consolidated opinion, *Conaway v. State*, 464 Md. 505 (2019) (holding that in seeking review of revocation of probation, probationers are required to proceed by application for leave to appeal rather than by direct appeal). Shortly after the Court of Appeals issued its opinion, we granted Johnson's still-pending application for leave to appeal.

## QUESTIONS PRESENTED

Johnson presented four questions for our review, which we have condensed and rephrased:

1. Did the circuit court err in concluding that there was sufficient evidence to rebut the statutory presumptive limit on a period of incarceration for a first technical violation of probation?

2. Did the circuit court err when it imposed a sentence of incarceration in excess of the statutory presumptive limit, although it did not find and state on the

---

[6] In addition to the conditions of the previous probation, the court required that Johnson have "no contact with any child under eighteen" and "[n]o contact with [the witness] or any member of her immediate family."

7

record that adhering to the presumptive limit would create a risk to public safety, a victim, or a witness?

3. Did the circuit court violate Johnson's due process rights when it allowed the complainant to address the court in an unsworn statement that was not subject to cross-examination?[7]

For the reasons discussed herein, we shall hold that, in a violation of probation hearing, where the technical rules of evidence do not strictly apply, the presumptive sentences for technical violations are not akin to evidentiary presumptions that the State can rebut only by introducing admissible evidence. We shall also hold that Johnson failed to preserve his complaint that the court did not expressly find and state on the

---

[7] Johnson formulated his questions as follows:

1. Did the circuit court clearly err in concluding there was sufficient evidence to rebut the statutory presumptive limit on a period of incarceration for a first technical violation of probation, and then imposing a ten-year sentence of incarceration, which is over 240 times longer than the presumptive limit of fifteen days?

2. Did the circuit court err and violate Johnson's due process rights when it allowed the complainant to address the court in an unsworn statement that was not subject to cross-examination, and then relied on that statement in finding that Johnson had committed a "public safety violation" that justified a sentence of incarceration in excess of the statutory presumptive limit?

3. Did the circuit court err when it imposed a sentence of incarceration in excess of the statutory presumptive limit, although it did not find and state on the record, after consideration of the factors listed in Md. Code Ann., Crim. Proc. §6-223(e)(2), that adhering to the presumptive limit would create a risk to public safety, a victim, or a witness?

4. Did the circuit court err when it sub silentio revoked Johnson's probation based on conduct that was neither illegal nor a violation of any condition of probation?

record that adhering to the presumptive limit would create a risk to public safety. Finally, we shall hold that the court violated Johnson's due process rights when it allowed the young woman to address the court without permitting Johnson to cross-examine her.

**STANDARD OF REVIEW**

A probation revocation proceeding typically involves two stages: "(1) a retrospective factual question whether the probationer has violated a condition of probation; and (2) a discretionary determination by the sentencing authority whether violation of a condition warrants revocation of probation." *Hammond v. State*, 436 Md. 22, 31 (2013) (citing *Wink v. State*, 317 Md. 330, 332 (1989)).

"At the second stage, that of whether the court's discretion should be exercised to revoke probation, appellate review is for an abuse of discretion." *Wink v. State*, 317 Md. at 338. "[A]buse of discretion will be found only if the trial court has erroneously construed the conditions of probation, has made factual findings that are clearly erroneous, or has acted arbitrarily or capriciously in revoking probation." *State v. Dopkowski*, 325 Md. 671, 678 (1992) (citation omitted).

**DISCUSSION**

**I.      The Justice Reinvestment Act and Statutory Framework**

In 2016, the General Assembly enacted the Justice Reinvestment Act. 2016 Md. Laws, ch. 515.[8] The Act's primary goal was to reduce Maryland's prison population and invest the resultant savings in "strategies to increase public safety and reduce

---

[8] The Act became effective on October 1, 2017.

9

recidivism." Revised Fiscal and Policy Note for Senate Bill 1005 (June 2, 2016). To achieve that purpose, lawmakers relied on the research and recommendations of the Justice Reinvestment Coordinating Council, which was asked to "develop a statewide policy framework of sentencing and corrections policies." Justice Reinvestment Coordinating Council, Final Report, S.B. 602, 2015 Leg. at 2 (Md. 2015). As part of this mandate, the Justice Reinvestment Coordinating Council studied the drivers of mass incarceration in Maryland and identified lengthy sentences for technical violations of probation as one of them. *Id.* at 8, 9.

Accordingly, among the comprehensive reforms enacted by the Justice Reinvestment Act were significant amendments to the statute governing probation revocations, Md. Code (2001, 2018 Repl. Vol.), § 6-223 of the Criminal Procedure Article ("CP"). Before the Act's amendments, if a trial judge found that a probationer or defendant had violated any condition of probation, the judge was authorized to "impose any sentence that might have originally been imposed for the crime of which the probationer or defendant was convicted or pleaded nolo contendere." Md. Code (2001, 2008 Repl. Vol., 2016 Supp.), § 6-223(d)(2) of the Criminal Procedure Article. The amendments placed presumptive limits on the duration of incarceration that may be imposed for a "technical" violation of probation. *State v. Alexander*, 467 Md. 600, 609 (2020); *Conaway v. State*, 464 Md. 505, 520 (2019); *Brendoff v. State*, 242 Md. App. 90, 111 (2019).

A "technical violation" is defined as "a violation of a condition of probation . . . that does not involve: (1) an arrest or a summons issued by a commissioner on a

10

statement of charges filed by a law enforcement officer; (2) a violation of a criminal prohibition other than a minor traffic offense; (3) a violation of a no-contact or stay-away order; or (4) absconding." CP § 1-101(q) (incorporating the definition of technical violation from Md. Code, § 6-101(m) of the Correctional Services Article). It is undisputed that Johnson's violations were "technical."

If a probationer commits a technical violation of probation, the court may revoke the probation granted or the suspension of sentence and "impose a period of incarceration of: (1) not more than 15 days for a first technical violation; (2) not more than 30 days for a second technical violation; and (3) not more than 45 days for a third technical violation[.]" CP § 6-223(d)(2)(i). Subsection (e)(1) creates "a rebuttable presumption that the limits on the period of incarceration that may be imposed for a technical violation . . . are applicable." The presumptive incarceration limits may be rebutted, however:

> if the court finds and states on the record, after consideration of the following factors, that adhering to the limits on the period of incarceration established under subsection (d)(2) of this section would create a risk to public safety, a victim, or a witness:
>
> (i)     the nature of the probation violation;
>
> (ii)    the facts and circumstances of the crime for which the probationer or defendant was convicted; and
>
> (iii)   the probationer's or defendant's history.

CP § 6-223(e)(2).

"Upon making such a finding, a court may impose a period of incarceration that exceeds those contained in the presumptive limits[.]" *Conaway v. State*, 464 Md. at 521; CP § 6-223(e)(3)(i).

11

**II.      Sufficiency of Evidence to Rebut the Statutory Presumption**

Johnson recognizes that because he admitted to violating his probation, the State met its initial burden of establishing that he had committed technical violations of his probation. According to Johnson, based on that admission, the court could have revoked his probation and sentenced him "to no more than" 15 days' incarceration.[9] He argues, however, that before the court can impose a sentence *greater* than the presumptive limit outlined in CP § 6-223, the State must produce "evidence legally sufficient to rebut that presumption." He relies on Md. Rule 5-301(a), which provides that "in all civil actions[10] a presumption imposes on the party against whom it is directed the burden of producing evidence to rebut that presumption." Johnson claims that the State did not meet its statutory burden because it did not offer any evidence to rebut the presumptive 15-day limit, but instead only proffered facts.

Johnson's reliance on the evidentiary principles espoused in Md. Rule 5-301 is misplaced. Before revoking a defendant's probation, the circuit court is required to conduct a hearing pursuant to Md. Rule 4-347(e). "A hearing for revocation of probation," however, is "neither a trial nor a critical stage of prosecution." *Edge v. State*, 63 Md. App. 676, 683 (1985) (citation omitted). Accordingly, the court is permitted to "conduct the revocation hearing in an informal manner and, in the interest of justice, [to]

---

[9] The State does not dispute Johnson's assertion that the applicable presumptive limit was 15 days of incarceration.

[10] A revocation of probation hearing is a civil proceeding. *Hammonds v. State*, 436 Md. 22, 36 (2013).

12

decline to require strict application of the rules [of evidence set forth] in Title 5[.]" Md. Rule 4-347(e)(2); *see also* Md. Rule 5-101(c)(2). Put simply, the rules regarding presumptions in Title 5 do not strictly apply in a proceeding, such as a revocation of probation hearing, in which Title 5 does not strictly apply.

The statutory presumption in CP § 6-223(e) is not an evidentiary presumption that a party must submit evidence to rebut. Rather, the statutory presumption is a limitation on the court's discretion. For the court to depart from the presumption, it must consider the factors enumerated in CP § 6-223(e)(2), including the nature of the probation violation, the facts and circumstances of the original crime, and the probationer's history. The court may base its decision on information that satisfies the technical rules of evidence (including the probationer's admissions) and on other reliable information, such as undisputed facts and the record in the probationer's criminal trial.

## III.    Adequacy of Consideration on the Record

Johnson argues that even if there had been sufficient evidence to sentence him beyond the presumptive limits of incarceration, his sentence should be vacated because the court did not comply with the procedural requirements of CP § 6-223. Specifically, he argues, the judge failed to discuss the factors listed in CP § 6-233(e)(2), and "certainly did not" find and state on the record, after considering those factors, that adhering to the presumptive limit would create a risk to public safety, a victim, or a witness.

Johnson did not make this argument in the circuit court and thus has not preserved it for appeal. *See* Md. Rule 8-131(a). A contemporaneous objection is required to preserve an issue for appellate review. *Nalls v. State*, 437 Md. 674, 691, 693 (2014)

13

(holding that a contemporaneous objection was required to preserve an appellate challenge to the sufficiency of the court's determination and announcement on the record that a jury trial waiver was made knowingly and voluntarily).

After the judge discussed the nature of Johnson's violations, the underlying crime, and Johnson's history, he found that Johnson's violations, though "technical," were "public safety violation[s]." Consequently, the court sentenced Johnson to life in prison, with all but 10 years suspended. Johnson did not object to the court's failure to discuss the factors listed in § 6-233(e)(2) or the failure to state on the record that adhering to the presumptive limit would create a risk to public safety. The issue, therefore, is not preserved for our review.

Perhaps anticipating this result, Johnson argues that even if we determine that this issue is unpreserved, we should nonetheless exercise our discretion under Md. Rule 8-131(a) to review it. Johnson claims that review is necessary here to give "proper guidance to trial courts" regarding procedures to follow when imposing a sentence for a technical violation that exceeds the presumptive limit. We disagree. We find the language of § 6-223(e) to be quite clear and trust that circuit court judges will follow the procedures it establishes when concluding that the presumptive limits on incarceration should not apply. If probationers think that the court is not meeting its obligations under the statute, they have the opportunity to lodge an objection on that basis.

## IV.    Due Process Violation

Johnson asserts that the circuit court violated his due process rights when it allowed the young woman from the carnival to address the court in an unsworn statement

that was not subject to cross-examination. Relying on that statement, the court found that Johnson's conduct was "a public safety violation" and imposed a sentence that exceeded the presumptive limits.

As a preliminary argument, the State contends that this claim is not preserved. The State argues that, although Johnson's counsel objected to allowing the witness to address the court, counsel did not specifically object on the basis that the witness was not subject to cross-examination.

We disagree that the claim is unpreserved. Counsel made a contemporaneous general objection (*see* Md. Rule 2-517(a); Md. Rule 4-323(a)) that preserved all grounds for the inadmissibility of the young woman's testimony, including that she was not subject to cross-examination. *See Boyd v. State*, 399 Md. 457, 475-76 (2007) (explaining that the Maryland Rules regarding the timeliness of objections "reflect the long established Maryland practice that a contemporaneous general objection to the admission of evidence ordinarily preserves for appellate review all grounds which may exist for the inadmissibility of the evidence"). Furthermore, when overruling defense counsel's objection to hearing from the witness, the judge explained, "I'm not going to compel [the witness], put her under oath, or anything else." In so doing, the judge preemptively denied any request for cross-examination. It was unnecessary for defense counsel to object further.

In the alternative, the State argues that Johnson had no right to cross-examine the witness, because her statement to the court was given in "sentencing," after the court had already found that Johnson was in violation of his probation. According to the State, the

15

statement was therefore akin to a victim impact statement, which generally is permissible in sentencing. *Payne v. Tennessee*, 501 U.S. 808, 825 (1991).

Neither party disputes that when the judge allowed the young woman to address the court, he had already found that Johnson had committed technical violations of his probation. Johnson correctly notes, however, that the court had not yet announced a decision to revoke his probation. "A finding that a defendant has violated probation does not automatically or necessarily mean that that defendant's probation must be revoked." *Jefferson-El v. State*, 330 Md. 99, 111 (1993). Johnson maintains that, because he was not given the opportunity to confront and cross-examine this witness, the court violated his right to due process. We agree.

Under the Fourteenth Amendment to the United States Constitution, the State may not "deprive any person of life, liberty, or property, without due process of law[.]" In *Morrisey v. Brewer*, 408 U.S. 471 (1972), the Supreme Court recognized that the liberty of a person released from prison on parole is "within the protection of the Fourteenth Amendment." *Id.* at 482. The Court held that due process requires that the State must provide a hearing before revoking a person's parole based on an alleged violation of the conditions of parole. *Id.* at 487-88. The revocation hearing "must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation." *Id.* at 488.

The Court further held that "the minimum requirements of due process" for a parole revocation hearing include:

16

(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) *the right to confront and cross-examine adverse witnesses* (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id*. at 488-89 (emphasis added).

A year later, in *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), the Supreme Court explained that it perceived no "difference relevant to the guarantee of due process between the revocation of parole and the revocation of probation." *Id.* at 782. The Court observed that "[p]robation revocation, like parole revocation, is not a stage of a criminal prosecution, but does result in a loss of liberty." *Id.* "Accordingly," the Court said, "a probationer, like a parolee, is entitled to . . . a final revocation hearing, under the conditions specified in *Morrissey v. Brewer*[.]" *Id.* "Both the probationer or parolee and the State have interests in the accurate finding of fact and the informed use of discretion—the probationer or parolee to insure that his liberty is not unjustifiably taken away and the State to make certain that it is neither unnecessarily interrupting a successful effort at rehabilitation nor imprudently prejudicing the safety of the community." *Id.* at 785.

Thus, at a probation revocation hearing, "the 'minimum requirements of due process' include . . . the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)[.]'" *Id.* at 786 (quoting *Morrisey v. Brewer*, 408 U.S. at 489); *see Black v. Romano*, 471 U.S.

17

606, 612 (1985). Maryland Rule 4-347 sets forth "hearing procedures" that "are designed to comply with [these] constitutional due process rights." *State v. Alexander*, 467 Md. 600, 608 (2020). This Rule provides that, at a probation revocation hearing, "[t]he defendant shall be given the opportunity to admit or deny the alleged violations, to testify, to present witnesses, and to cross-examine the witnesses testifying against the defendant." Md. Rule 4-347(e)(2).

There is no question, therefore, that due process required that Johnson have the right to confront and cross-examine adverse witnesses at his probation revocation hearing. *See State v. Brookman*, 460 Md. 291, 315-16 (2018); *State v. Dopkowski*, 325 Md. 671, 680 (1992); *Bailey v. State*, 327 Md. 689, 698 (1992); *Adkins v. State*, 324 Md. 641, 655 n.8 (1991); *Hersch v. State*, 317 Md. 200, 208 (1989); *Brown v. State*, 317 Md. 417, 422 (1989); *State v. Fuller*, 308 Md. 547, 552 (1987); *Blanks v. State*, 228 Md. App. 335, 353 (2016); *Thompson v. State*, 156 Md. App. 238, 245 (2004); *Wilson v. State*, 70 Md. App. 527, 532 (1987); *Chase v. State*, 68 Md. App. 413, 417 (1986); *Lau v. State*, 29 Md. App. 615, 621 (1976); *McRoy v. State*, 24 Md. App. 321, 324 n.1 (1975). The remaining question is whether, under the circumstances, the 17-year-old who made the statement at Johnson's probation revocation hearing was an adverse witness.

In every meaningful sense of the term, she was. The attorney for the State requested that the court provide her with an opportunity to speak and offered to put her under oath if necessary. Johnson's counsel opposed the State's suggestion. The express purpose of offering the statement was to support the State's argument that Johnson "pose[d] a risk to public safety" and that, "therefore, the presumptive fifteen day limit"

18

should "not apply." The testimony appears to have produced its intended effect. Based on the testimony, the court found that Johnson's probation violation amounted to "a public safety violation" and then adopted the State's suggestion to impose a life sentence, with all but an additional 10 years suspended. If the court had not found a risk to public safety, a victim, or a witness, then Johnson would have been entitled to an immediate release from custody, because he had already served more than 15 days. *See State v. Alexander*, 467 Md. at 621-22.

By creating presumptive sentences for technical violations of probation and thereby confining a judge's discretion, the Justice Reinvestment Act has altered the procedural landscape. Now, before the court may consider imposing a sentence in excess of the presumptive limits, the court has additional fact-finding responsibilities. The court must find whether the probationer poses a risk to public safety, a victim, or a witness, after considering various factors. A probationer has a due process right to confront and cross-examine the witnesses whose testimony forms a basis for the court's findings. The court cannot avoid the probationer's due process right by accepting the witness's unsworn statement and prohibiting the probationer from questioning her.

In the present case, the judge overruled defense counsel's objection to hearing from the witness on the basis that "anything can be considered for sentencing, which is where we are." It is not entirely clear, however, that that is "where the court was" at that point in the proceeding. The judge had not yet announced a decision to revoke probation, nor had he considered the CP § 6-223(e)(2) factors or made any finding as to whether Johnson's release would create a risk to public safety, a victim, or a witness. Therefore,

19

the "factfinding" stage was not completed, and Johnson had a right, which he was not permitted to exercise, to cross-examine the adverse witness. The State was offering the testimony to prove facts that might have made the difference between an immediate release and the potential re-imposition of a life sentence. Regardless of whether the court would have been swayed by additional testimony that cross-examination may have elicited, the opportunity is nonetheless essential to fulfill the minimum requirements of due process.

For these reasons, we vacate the judgment and remand the case to the Circuit Court for Washington County for proceedings consistent with this opinion.

**JUDGMENT OF THE CIRCUIT COURT FOR WASHINGTON COUNTY VACATED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY WASHINGTON COUNTY.**

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/cosa/1134s19cn.pdf